129 P.2d 329

**STATE ex rel. SENA v. TRUJILLO, State Auditor.**

**No. 4704.**

Supreme Court of New Mexico.

Sept. 18, 1942.

Edward P. Chase, Atty. Gen., and George H. Hunker, Jr., and Howard F. Houk, Asst. Attys. Gen., for appellant.

Manuel A. Sanchez, of Santa Fe, for appellee.

MABRY, Justice.

We are here called upon to determine whether Chapter 110 of the Laws of 1941, which provides a pension for every person who has served the territory and the State of New Mexico for a period of 30 consecutive years and who has passed the age of 65 years, is applicable to one who meets the requirements of the Act as to period of service and age, but who had left the service of the State prior to the enactment of the statute. The statute provides:

"Section 1. That every person or persons, who has served the Territory and the State of New Mexico, for a period of thirty consecutive years, and who has passed the

age of sixty-five (65) years, shall be entitled to receive a pension, in the sum of One Hundred and twenty-five ($125.00) dollars per month for the rest of his or her life.

"Section 2. The pension provided for in Section 1 of this Act shall be paid by the State Treasurer, on a warrant from the State Auditor, out of any funds in his hands, not appropriated for the payment of interest on the bonded debt."

Suit was filed by one Jose D. Sena who had served as clerk of the supreme court of the Territory and the State of New Mexico for more than 30 consecutive years, seeking, through mandamus, to require respondent as State Auditor to pay him the $125 per month provided by the Act. The trial court upheld the position of relator Sena and directed payment of the amount prescribed by the Act, and respondent Trujillo appealed.

The constitutionality of the Act is not questioned, excepting as it applies to one not in the service of the State at the time of its passing. Sena had not been in such service for more than 10 years prior to the passage of the said Act.

Although three points are raised in the assignment of error, all of them clearly relate directly to each other and can be appropriately grouped and discussed under one point, viz., that it would be violative of the Constitution of the State to allow such pension to relator. There are only three sections of the Constitution which could have any bearing upon the question at issue, and these provide:

Section 14, Article IX: "Neither the state, nor any county, school district, or municipality, except as otherwise provided in this constitution, shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation, or in aid of any private enterprise for the construction of any railroad; * * *."

Section 27, Article IV: "No law shall be enacted giving any extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made; nor shall the compensation of any officer be increased or diminished during his term of office, except as otherwise provided in this constitution."

Section 31, Article IV: "No appropriation shall be made for charitable, educational or other benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state, * * *."

Able briefs have been filed by both parties to the cause. Obviously both have made an exhaustive search for authority upon the point in question. It is conceded that this is a case of first impression here in this state. Appellant cites Mahon v. Board of Education of the City of New York, 171 N.Y. 263, 63 N.E. 1107, 89 Am.St.Rep. 810, as a case exactly in point and as one supporting his contention. Appellee relies upon the recent case of Bedford v. White, 106 Colo. 439, 106 P.2d 469, 474, in which

a divided court upheld the constitutionality of the Colorado Pension Act as it applied to Justices of the Supreme Court who had served the required ten years upon the bench, and had reached the age of 65 years, regardless of the fact that such Justices were not serving the State in 1939, the date of the passage of the Act.

It probably will not be disputed that the Mahon case, supra, is in point, and that it involved an interpretation of Constitutional provisions similar to those here involved. But, appellee points out that this is not a late decision and says that many other courts have declined to follow it.

On the other hand, appellant questions the soundness of the holding in the Bedford case, supra, and looks, rather, to the dissenting opinion in this Colorado case for the better reason and logic. The majority opinion in Bedford v. White, supra, appears to rest upon the theory that the power to grant pensions to servants of the sovereign, be it the Nation or the State, has long been recognized and exercised without substantial question; and that unless directly and specifically prohibited by Federal or State Constitutions, such power may be exercised. We take the following pertinent language from the Bedford case: "Pensions for military service have been granted almost from the very inception of our government. In United States v. Hall, supra, the Court said: 'Power to grant pensions is not controverted, nor can it well he, as it was exercised by the States and by the Continental Congress during the war of the Revolution; and the exercise of the power is coeval with the organization of the government under the present Constitution, and has been continued without interruption or question to the present time.' The court speaking further said: 'Power existed in the States before the Constitution was adopted, and it would serve to undermine the public regard for our great charter if it could be held that it did not continue the same power in the Congress.' Powers that the states might and did grant to the federal government they may exercise unless prohibited by the federal Constitution or Constitutions of the respective states. Nowhere are pensions mentioned in the Constitution of Colorado. Unless the granting of them is expressly prohibited, or language is used that by necessary implication must be construed as a prohibition, the power to grant them exists as a residual power of the state."

The Colorado court noticed and discussed the case of Mahon v. Board of Education, supra, and it distinguished this New York case upon the theory that it was rather directly grounded upon the proposition that "there was no moral obligation on the city of New York to establish a pension system in favor of teachers," and that the benefits attempted to be bestowed were "extra compensation" and thus forbidden by the Constitution of that State.

The Colorado court, in applying the pension Act of that State to persons not rendering service at the time the Act was passed, made this observation: "If within

the meaning of Constitutional provisions, such as section 28 of article V, supra, a pension is not extra compensation for services in office where, as in DeWolf v. Bowley [infra], the judge is in office when the act is passed, we are unable to see wherein the mere fact that all, instead of a part, of the service required is performed before the act is passed would change the situation. Surely no more merit arises deserving of the gratitude of the sovereign for faithful public services rendered in whole or in part after a pension law is enacted than attaches to exactly similar services rendered before the date of its passage. Even though a law creates a pensionable status based on services wholly rendered prior to its enactment and in such sense might be considered retrospective in operation it would not offend against section 11 of article II of the Constitution, for this section, a part of the Bill of Rights, is for the protection of the rights of the citizen and is not applicable to the State. In Graham Paper Co. v. Gehner, 332 Mo. 155, 59 S.W.2d 49."

As in the case at bar, it was there argued that, even though the state had power to provide that pensions be paid to persons serving when the law was passed and to men who had theretofore acquired pensionable status on the ground that pensions will serve a public purpose, in no event could it be said a public purpose was there served, because it provided a pension to persons who already had served. We quote from that which the court said in that respect: "Neither of them had a pensionable status when their terms expired, for such a status cannot exist without a law to create it and there was no law in effect that created such a status for either of them when they retired from office. It is argued in support of the validity of the act, on the ground that it serves a public purpose as to those judges in office when the acts were passed, that it will operate subjectively upon them to induce them to retire from office before the infirmities of age deprive them of the ability to render further efficient service when otherwise, confronted with economic insecurity and with the uncertainty of regaining late in life a law practice surrendered upon entry into office might cause such men though conscious of their infirmities to continue in office to the detriment of the state, when otherwise they would retire and permit others able to render efficient service to fill their places. It is argued further that able men, who because of present economic loss and prospective economic insecurity late in life or of the difficulty and hazard of reestablishing themselves after being withdrawn for a long period of years from private business might hesitate to accept a judicial office, will be free, with a pension in prospect, to enter upon such service and the state may be benefited thereby. Such matters have been noted by courts as proper for consideration in determining whether a public purpose is served."

It was next contended that the Act, in so far as it affected the relators, was in effect an appropriation for a charitable purpose to persons not under absolute con-

trol of the state. As to that the court observed: "It is contended that the 1939 act, as it affects White and Adams, is in effect an appropriation for a charitable or benevolent purpose to persons not under the absolute control of the state, and is, therefore, in specific violation of said section 34. However, it is universally held that if such payments are for a public purpose, the incidental fact that the recipients are private persons does not violate this constitutional provision. One applicable statement on this subject, we think, is sufficient: 'In deciding whether such purpose is public or private, courts must be largely influenced by the course and usage of the government, the object for which taxes and appropriations have been customarily and by long course of legislation levied and made, and what objects have been considered necessary to the support and for the proper use of the government. Whatever lawfully pertains to this purpose and is sanctioned by time and the acquiescence of the people may well be said to be a public purpose and proper for the maintenance of good government. * * * If it can be seen that the purpose sought to be obtained is a public one and contains the elements of public benefit, the question how much benefit is thereby derived by the public is one for the Legislature, and not the courts.' People ex rel. v. Barrett, 370 Ill. 478, 481, 19 N.E.2d 356, 359, 121 A.L.R. 1311, quoting from Hagler v. Small, supra [307 Ill. 460, 138 N.E. 849], and citing many authorities." And in discussing the applicability of a pension act, where it has been amended to increase the amount of the pension after service has been rendered, as has been held by other courts, the court stated: "We see no distinction between the situations of pensioners whose pensions based on past services are increased by an amendment, and the situations of those who by virtue of an amendment became eligible to a pension by virtue of past services, except that in the one case a pensionable status is acquired to the amount of the increase and in the other a pensionable status is acquired as to the amount of the pension."

Mr. Justice Burke, writing the dissenting opinion in the Bedford case, supra, and in criticizing the majority holding, states his position rather clearly in this paragraph: "My position is that there must be some reasonable theory of public benefits. If there be such the soundness of it rests with the Legislature. If, as here, there is no such theory, the grant is purely private and the constitutional inhibition stands. The only logical suggestions of public benefits are those mentioned and repudiated in the court's opinion. Upon them Judge Dillon's conclusion rests but they have no application to defendants in error. They could neither have come into the service, stayed in it, nor left it, because of the Act of 1939. Hence I think they are not permitted by the constitution to take under that Act and the judgment of the court should be reversed."

This, appellant contends, states briefly his position. Unless there is present some sup-

portable theory of public benefits, the New Mexico Act, if applied to one not in the service at the time of its passage, clearly offends one or more of the foregoing Constitutional provisions. Moreover, appellant points out that the Colorado court did not have before it any such language as is found in Section 14 of Article IX of our Constitution, which, he contends, brings the pension Act, as applying to relator, within that Constitutional provision which prohibits a "donation to or in aid of any person." It may be doubted whether the Colorado court would have been influenced by this additional Constitutional language, since the language which it was construing seems broad enough to have covered the question here at issue.

In support of appellant's position he cites the following cases: Bush v. Board, etc., 159 N.Y. 212, 53 N.E. 1121, 45 L.R.A. 556, 70 Am.St.Rep. 538; People v. Abbott, 274 Ill. 380, 113 N.E. 696, Ann.Cas.1918D, 450; State v. Love, 89 Neb. 149, 131 N.W. 196, 34 L.R.A., N.S., 607, Ann.Cas.1912C, 542; People v. Partridge, 172 N.Y. 305, 65 N.E. 164; DeWolf v. Bowley, 355 Ill. 530, 189 N.E. 893; Porter v. Loehr et al., 332 Ill. 353, 163 N.E. 689, and others.

In the case of O'Dea v. Cook et al., 176 Cal. 659, 169 P. 366, 367, the Supreme Court of California pointed out that a pension became a gratuity only when it was granted for services previously rendered, and which at the time they were rendered gave no rise to legal obligation. It held in that case that where services are rendered under the pension statute there in question that the pension provisions "become a part of the contemplated compensation for those services, and so in a sense a part of the contract of employment itself."

We find in I Dillon on Municipal Corporation, 5th Ed., Sec. 430, the following general statement of the law dealing with the constitutionality of pension acts:

"It is in effect pay withheld to induce long-continued and faithful service, and the public benefit accrues in two ways: first, by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and, second, by retiring from the public service those who by devoting their best energies for a long period of years to the performance of duties in a public office or employment have, by reason thereof or of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physical or mental vigor. * * *

"But to be valid under constitutional requirements, the pensions must be conferred upon persons who at the time of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals, and a gift or gratuity."

Statutes have been adopted in most, if not all, of the states providing pensions or retirement pay for public school teachers,

for example. "But it seems, as has been said, that they have as their common basis not charity or benevolence, but compensation for faithful, longcontinued, valuable, public service." 40 Am.Jur. 973, Par. 17. See Busser v. Snyder, 282 Pa. 440, 128 A. 80, 37 A.L.R. 1515.

██ We are constrained to hold that the Act cannot apply to appellee. It is generally conceded that a judiciously administered pension system is a potent agency in securing and retaining the services of able public civil officers and employees. The reasons for this are so clear and manifest that they need not be particularized. As has often been said, such a pension system is an inducement to the able to enter the service of the State, and for an equally good reason it is an inducement to those who have grown old in the service to step down and make way for the more efficient. Such good reasons suggest themselves to all upon simple reflection.

But, obviously appellee could not have come into the service, stayed in it, nor left it because of the Act of 1941. When we adopt the theory that there must be some relation between the service and the reward through pension, and some reasonable theory of public benefit accruing by virtue thereof, as we do, appellee must fail.

In Porter v. Loehr et al., supra [332 Ill. 353, 163 N.E. 691], the Illinois court, in holding that an amended pension act could not apply to policemen no longer in service, observed: "The amendatory acts increasing the pensions of retired policemen do not contemplate the rendition of additional services by the pensioners. They were paid when they performed their services and the amounts of their pensions were fixed by law when they retired. The increases are not granted for services to be performed by the pensioners, but have as their sole basis or justification the services which they rendered prior to their retirement. * * * No obligation, either legal or moral, to pay more than the stipulated compensation arises where no additional services have been or will be rendered."

Turning again to the Colorado case of Bedford v. White, supra, Mr. Justice Bakke, speaking for the majority, expresses the thought that if a pension "serves a present public purpose it is not a mere private grant even though as an incident to the accomplishment of the public purpose the recipients thereof may be personally benefited." In Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, we approved the reasoning of the opinion by Mr. Chief Justice Roberts in Harrington v. Atteberry, 21 N.M. 50, 153 P. 1041, 1046, holding the circumstance that a public purpose was served was not enough to relieve legislation authorizing county commissioners to appropriate money in aid of a county fair association from the inhibition of Const., Art. IX, Sec. 14, against making a donation in aid of any person or public or private corporation. Mr. Chief Justice Roberts said: "Citizens of the county of Santa Fé or a private corporation might well cause a public bridge to be constructed in the county which would serve a public purpose or ben

efit; but they would not be exercising any public governmental function, because they are not the instrumentalities or agencies of the government endowed with the power of their principal." He continued: "* * * while the purposes which the relator was carrying out were of a public nature, culture and education, the association was nevertheless a private corporation and would have received a 'donation' within the meaning of the constitutional provisions, supra."

It is not enough that we can say that a public purpose is being served when we donate to those who have performed for the state a valuable public service over a period of 30 consecutive years. The constitution makes no distinction as between "donations", whether they be for a good cause or a questionable one. It prohibits them all. And, likewise, Sec. 27 of Art. IV and Sec. 31 of Art. IV of the Constitution prohibit the giving of extra compensation, "after services are rendered", and appropriations "to any person, corporation, association, institution or community, not under the absolute control of the state," respectively.

From all the foregoing it appears that the act, as heretofore stated, offends one or more of the pertinent constitutional provisions cited.

The judgment is reversed with instruction to the trial court to set aside its judgment heretofore rendered and enter judgment dismissing the writ, all in accordance with this opinion; and, it is so ordered.

BRICE, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.