273 P.2d 743

**STATE** *ex rel.* **HUDGINS et al.**

v.

**PUBLIC EMPLOYEES RETIREMENT
BOARD et al.**

No. 5793.

Supreme Court of New Mexico.

Aug. 23, 1954.

Richard H. Robinson, Atty. Gen., William J. Torrington and Fred W. Standley, Asst. Attys. Gen., for appellants.

Dean S. Zinn and Frank B. Zinn, Santa Fe, for appellees.

LUJAN, Justice.

This is an appeal from the judgment of the district court of Santa Fe county awarding a writ of mandamus directing appellants (respondents) to pay unto appellees (relators) annuities as provided for under section 2, subparagraph 2.1(6) of the Laws of 1953, c. 162, being section 10–602, subparagraph 2.1(6) of the 1941 Compilation, Pocket Supplement, or show cause for failure so to do.

This suit was instituted as a class action by J. D. Hudgins and others similarly situated against the Public Retirement Board, its officers and named State officials. On August 25, 1953, the above court issued an alternative writ of mandamus for appellees directing appellants to comply with the provisions of the foregoing section of the act. To the writ the appellants filed their response alleging therein that they refused and do refuse to approve any payments as provided for in the above section of the act for the reason that it violates section 14 of article 9 and sections 27 and 31 of article 4 of the New Mexico Constitution. On February 25, 1954, the alternative writ of mandamus was made permanent and appellants appeal. There is no dispute as to the facts.

Chapter 167 of the Laws of 1947 provided that all employees of the state and its political subdivisions so employed on or after August 1, 1948, not participating in any other retirement or pension system were eligible to receive the benfits thereof after complying with the conditions con-

tained therein. Whether an employee otherwise qualified became entitled to the benefits of the act depended upon his own volition. He could elect not to be a participant by filing with the proper officials a written notice to that effect. If he elected to come under the act he was required to contribute three and one-half per cent. of the amount of each salary payment received by him. Those contributions were deducted by the state unit which made the salary payments to the respective employees and were transmitted to the proper officials. Any employee who had served the designated period of time was entitled to receive annuity payments after his retirement. The act also contemplated that the state and its political subdivisions would make contributions to the system by various means, as well as from gifts, unclaimed deposits, interest on deferred payments by members, investment securities and interest therefrom, and all other monies and assets, from whatever source derived.

Appellees had all been employees of the state or its political subdivisions long before the enactment of the above statute and their participation therein. They were all retired under the provisions of the above act and are receiving the benefits thereof. Their rights to participate in the annuity fund having been fixed, they could thereafter only be changed by mutual consent.

In 1953 the Legislature repealed the 1947 Retirement Act, as amended by the Act of 1949, c. 174, and enacted Chapter 162, Laws of 1953, which although somewhat different in scope and wording, had the principal effect of increasing benefits to public employees, and to permit those employees who had annuitant status under the 1947 act to participate therein provided they elected so to do by paying an additional lump sum of money to the Association. The pertinent provision of the act provides as follows:

Section 2, subparagraph 2.1(6).

"Each annuitant and beneficiary receiving an annuity under the aforesaid Chapter 167, as amended, on the day preceding the effective date of this Act, shall continue to receive the same annuity; provided, however, that if any such annuitant or his beneficiary shall pay to the Association a lump sum payment equivalent to $1\frac{1}{2}$ per cent of the total salary received by him, during the last 5 years immediately preceding his retirement, the amount of his annuity shall be determined as hereinafter in this Act provided."

Were the vested rights of appellees changed by mutual consent? We believe they were. The Legislature, in effect, by the Act of 1953, made this offer to all annuitants under the 1947 Act: If you will pay to the association a lump sum

equivalent to 1½ per cent. of the total salary received by you, during the last five years immediately preceding your retirement, the amount of your annuity will be increased accordingly. This offer was accepted by appellees and they paid the additional percentage of their salaries to the association for five years immediately preceding their retirement.

Appellants contend that the above provision of the act violates sections 27 and 31 of article 4 and section 14 of article 9 of the Constitution and therefore it is unconstitutional.

Section 27 of article 4 of the Constitution of this state prohibits the Legislature from giving any extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made. Section 31 declares that no appropriation shall be made for charitable, educational or other benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state. Section 14 of article 9, prohibits the state, counties, school districts and municipalities, except as provided in the Constitution, from directly or indirectly lending or pledging its credit, or making any donation to or in aid of any person, association or public or private corporation or in aid of any private enterprise for the construction of any railroad, etc.

We are of opinion and so hold that the above provision of Chapter 162, Laws of 1953, does not violate the sections of the Constitution herein above referred to, on the ground that the effect thereof is to appropriate public money for private use or to allow extra compensation to public officers for services already performed, nor does it constitute a donation or gratuity.

The Supreme Court of the State of Illinois in construing a statute similar to ours, in Raines v. Board of Trustees of Illinois State Teachers' Pension Fund, 365 Ill. 610, 7 N.E.2d 489, held that a law establishing a teachers' retirement fund, made up in part of voluntary contributions by the teachers and in part from state funds, did not violate the sections of their constitution, which are similar to ours. This case was followed by that of Ridgley v. Board of Trustees of State Institutions, Teachers' Pension and Retirement Fund, 371 Ill. 409, 21 N.E.2d 286, in which a statute was upheld which authorized a teacher, who had not come within the provisions of the original State Teachers' Pension and Retirement Fund Act be permitted by the payment of a lump sum to accept the benefits thereof. The same result was reached in Krebs v. Board of Trustees of Teachers' Retirement System, 410 Ill. 435, 102 N.E.2d 321, 27 A.L.R.2d 1434. The distinction between a pension and an annuity fund is clearly pointed out in the Raines case, 365 Ill. 610, 7 N.E.2d at

page 491, in which it is said: "A 'pension' is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure. People ex rel. Donovan v. Retirement Board, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; Porter v. Loehr, 332 Ill. 353, 163 N.E. 689; Pecoy v. City of Chicago, 265 Ill. 78, 106 N.E. 435." Where, however, the contributions are voluntary a different case is presented, as is also pointed out in the Raines case:

"There is a wide difference between voluntary contributions to a fund under a statutory elective right and being compelled to suffer deductions without any such right. In the latter case the officer or employee has no voice in determining whether or not he will suffer such exactions. They are imposed by the statute and deducted even if against his will. In the other case it is wholly a matter of choice with him. He may elect to come within the terms of the act and receive its benefits, or he may forego that privilege at his option, with no other effect than to deprive him of participating in the fund. If he does not elect to contribute, he receives and retains the full amount of his salary or wages. If he elects to contribute, the amounts are deducted by his direction. The effect is the same as if his full salary were paid to him and after it became his private means he in turn contributed to the retirement fund. In such case there is neither reason nor authority to hold that the fund remains public money in which he has no right or interest."

Then the court said:

"The relations between voluntary contributors and the sovereign being contractual, it follows that the rights created are not measured by the rights of pensioners. They are similar, and amount, in effect, to insurance contracts providing annuities upon maturity of the contract or policy of insurance. The basis of such annuities is the same as the basis of any other contract. The consideration is the offer of the sovereign, the acceptance of the offer, and performance of its terms. It is a familiar principle that the Legislature possesses all powers not prohibited by the limitations of the Constitution. Among such powers is the power to contract, where the contract is not within any constitutional inhibition or against public policy. The right of the State to contract for the payment of annuities to its officers and employees under prescribed conditions is not challenged and has been repeatedly upheld. No reason is observed why the parties to such a contract may not make provision for an optional in-

crease of the annuity by providing for additional contributions to the fund. Under contracts based on optional voluntary contributions, the contributors have a substantial interest in the fund by virtue of the amounts paid in under the terms of the contract. The benefits to be derived are not gratuities from public funds for past services, and therefore an increase in such benefits in consideration of further contributions does not violate the constitutional provision prohibiting extra pay for past services. The fact that the contributions may be smaller than the payments required by insurance companies under experience and mortality tables to mature policies for similar amounts does not detract from the contractual relation. The question of the wisdom of such rates is not within the province of the courts, but is a matter for the consideration of the Legislature."

We think that the reasoning of the Illinois cases are sound and applicable to the character of act involved in the case here under consideration. See, also, People ex rel. Albright v. Board of Trustees of Firemen's Pension Fund, 103 Colo. 1, 82 P.2d 765, 118 A.L.R. 984.

The case of Porter v. Loehr, 332 Ill. 353, 163 N.E. 689, cited by appellants does not apply, because the recipient of a policeman's pension had been retired, and the statute involved attempted to authorize payment of larger benefits as an extra allowance for past services. The obligation which the performance of those services imposed upon the public had been performed, which alone made the act subject to condemnation, as pointed out in Raines v. Board of Trustees of Teachers' Pension Fund, supra.

The case of State ex rel. Sena v. Trujillo, 46 N.M. 361, 129 P.2d 329, 142 A.L.R. 932, heavily relied on by appellants, has no persuasive force herein. In that case there was no applicable pension system in existence at the time the employee was retired, more than ten years before the passage of the act. The answer to the question whether a pensionable status may be created retroactively to include persons who had already been retired may not afford a guide in resolving the question whether an amendment to the retirement law may afford additional benefits to members who had already acquired a retired annuitant's status under a prior act.

Finding no reversible error the judgment is affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON and SEYMOUR, JJ., concur.

SADLER, J., dissenting.

SADLER, Justice (dissenting).

I am unable to see how we can uphold the judgment before us without overruling State ex rel. Sena v. Trujillo, 46 N.M. 361, 129 P.2d 329, 142 A.L.R. 932, in which we expressly declined to follow the majority opinion in Bedford v. White, 106 Colo. 439, 106 P.2d 469, preferring instead the reasoning of a minority opinion by three of the justices. We held the Act before us violated art. IV, § 27, and art. IX, § 14, of the State Constitution, more especially the former, providing that no laws should be enacted giving extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made. How an amendment to the existing law giving, in exchange for approximately $300, an annuity of $600 for life to former officers and employees already retired, without the rendition of additional services, can escape condemnation of this constitutional proviso has not been satisfactorily explained by the majority.

If precedent alone would suffice to support the result declared, it may be conceded the majority have one in the case mainly relied upon in the prevailing opinion, namely, Raines v. Board of Trustees, 365 Ill. 610, 7 N.E.2d 489. In my judgment, however, the reasoning there advanced to support the result announced is directly contrary in certain material respects to principles deemed by us controlling in the Sena case.

Furthermore, we cited with approval in the Sena case, decided some five years after the Raines case, the earlier Illinois case of Porter v. Loehr, 332 Ill. 353, 163 N.E. 689, holding invalid an amended act which increased pension benefits of retired policemen without any obligation to render additional services. In the Raines case, the court seeks to distinguish Porter v. Loehr, supra, by the magic of calling it a *pension* act, as compared to a *retirement* act, seemingly unmindful of anomaly that the very act being construed was "an act in relation to an Illinois State Teachers' *Pension* and Retirement Fund" (Emphasis mine) [365 Ill. 610, 7 N.E.2d 489].

The reasoning advanced to support our conclusion holding invalid the Act involved in the Sena case, supra, in my judgment calls for the same result here as to the questioned section of the Act before us. The inability of the majority so to view the matter explains my disagreement with the prevailing opinion.

Accordingly, I dissent.