[No. 34654. *En Banc.* December 29, 1958.]

CHARLES F. SONNABEND *et al., Respondents,* v. THE CITY OF SPOKANE *et al., Appellants.*[1]

FINLEY, ROSELLINI, HUNTER, and MALLERY, JJ., dissent.

*B. A. Farley, Paul F. Schiffner,* and *Roland C. Wightman,* for appellants.

*Smith Troy* and *Don Cary Smith,* for respondents.

[1] Reported in 333 P. (2d) 918.

HILL, C. J.—The 1957 legislature fixed a new maximum-pension provision for retired and disabled policemen, and provided that "all existing pensions shall be increased to not less than one hundred fifty dollars per month as of July 1, 1957." Laws of 1957, chapter 84, § 2, p. 343.

From a mandate of the superior court of Spokane county to increase the pension of three retired policemen to one hundred and fifty dollars a month, the city of Spokane appeals.

One of the policemen had been receiving a disability pension of $75 a month since 1938; another, a retirement pension of $80.50 since 1939; and, the third, a disability pension of $79.31 since 1942.

At the time of their retirement, or disability, they were entitled, under the most favorable applicable statute, to a pension of one-half of the pay for the rank which they had held for one year preceding their disability or retirement, and the pensions were computed on that basis. There was a maximum-pension rate at the time of their retirement or disability with which we are not here concerned; but no minimum.

The city of Spokane, acting through its police pension board, has taken the position that this attempt to raise the pension of those whose retirement and disability pay had been fixed at a lesser amount (than $150), either by the statutes in effect at the time of retirement, or by some earlier statute relied upon by the retiring or disabled police officers, could not be increased by a statute enacted after their service had terminated and their retirement or disability pension had been fixed.

The city relies upon two constitutional provisions in support of its position: Art. II, § 25, and Art. VIII, § 7. We shall refer only to the former, which reads:

"Extra Compensation, Prohibited—The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered, or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

(An amendment approved at the November, 1958, election adds this sentence: "Nothing in this section shall be deemed to prevent increases in pensions after such pensions shall have been granted." This amendment has no bearing on this case. The issue before us is whether or not the superior court of Spokane county erred in issuing the writ of mandate appealed from under the constitutional provision in effect at the time the writ issued, *i.e.*, on February 20, 1958.)

■ We have held, frequently and recently, that pensions of this character (retirement and disability) are deferred compensation. *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536; *Aldrich v. State Employees' Retirement System* (1957), 49 Wn. (2d) 831, 307 P. (2d) 270.

■ It is obvious that the raising of the pensions of the three retired police officers is the granting of extra compensation "after the services shall have been rendered." The granting of such extra compensation is prohibited by the constitutional provision we have quoted. *State ex rel. Eshelman v. Cheetham* (1899), 21 Wash. 437, 58 Pac. 771; *State ex rel. Port of Seattle v. Wardall* (1919), 107 Wash. 606, 183 Pac. 67.

In *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726, construing Art. IV, § 26 of the Wisconsin state constitution (which is identical with Art. II, § 25 of our constitution heretofore quoted in full), the Wisconsin supreme court held that an attempt by the Wisconsin legislature to increase the pensions of school teachers, who had theretofore retired, was unconstitutional. The Wisconsin court said, p. 56,

" . . . The teachers' contracts for retirement benefits were contracts with the state and the compensation provided therein may not thereafter be increased by the legislature when the teaching is over. Their contract compensation was not expressed in purchasing power. Contracts can be so drawn and many of them are, whereby compensation is governed by a 'cost of living' index or some other standard. The instant contracts, however, did not demand performance by the state in terms of goods, wares or merchandise. Compensation was expressed in dollars, and additional

dollars are extra compensation, which the constitution forbids the legislature to grant."

(Despite the later case of *State ex rel. Holmes v. Krueger* (1955), 271 Wis. 129, 72 N. W. (2d) 734, the reasoning of the *Giessel* case, just quoted, is sound, unless we are prepared to say of policemen, as the Wisconsin court said in *Holmes v. Krueger, supra,* of school teachers, that they are not public officers, servants, agents or contractors because they are not paid from the state treasury.)

See, also, *Koehnlein v. Allegheny Co. Emp. System* (1953), 373 Pa. 535, 97 A. (2d) 88; *Jameson v. Pittsburgh* (1955), 381 Pa. 366, 113 A. (2d) 454.

It is unnecessary to labor the obvious. We are not unaware of the effects of inflation upon fixed incomes, be they salaries and wages, or pensions; nor are we unaware of the complete inadequacy of the pensions now being paid to these retired police officers, two of whom have suffered disabilities in the performance of duty; however, sympathy for their distress affords no justification for ignoring established constitutional restraints.

We have no choice but to say that under Art. II, § 25 of our state constitution, as it was in 1957, the 1957 legislature could not raise the pensions of those retired or disabled police officers whose pension rates had been fixed by acts in effect at the time of their retirement, or by earlier and more favorable acts.

The mandate issued by the superior court of Spokane county is quashed, and that court is directed to dismiss the application for a writ of mandate.

DONWORTH, WEAVER, OTT, and FOSTER, JJ., concur.

FINLEY, J. (dissenting)—The majority seems to recognize that a pension is not a gratuity, but is deferred compensation. However, the reasoning and result reached in the majority opinion seems to me to fit more closely the description that a "pension is a gratuity" than it does the description that a "pension is deferred compensation." I believe that the majority overlooks the significant import

of the contractual basis of pension rights in arriving at a result contrary to the views of most of the jurisdictions which have considered this problem in its contractual context; furthermore, I believe the majority overlooks respectable authority in our own jurisdiction which supports a contrary holding.

Basically, it appears to me that the holding in the majority·opinion stems from a conceptual difficulty. Inherent in the majority's position is the concept that respondents contracted not for a pension, but for a specific sum of money per month. I believe this results in part from an overemphasis of the dollar and cents difference between the respondents' pension payments before the statute in question was passed and payments received thereafter. In *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536, this court indicated that a policeman *does not contract for a dollar and cents payment upon retirement*; rather, he "contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions." (Italics mine.) The California court explained this very well in *Casserly v. Oakland* (1936), 6 Cal. (2d) 64, 56 P. (2d) 237, saying:

"In *Aitken v. Roche*, 48 Cal. App. 753, 755 [192 Pac. 464], in which the sole question was as to 'whether or not pensioners are entitled to one-half of the pay attached to their retirement rank when pension installments successively become due or to one-half of the pay which was attached to the rank when they were retired', we also read pertinent language as follows:

" 'On behalf of the defendants it is correctly stated that the right to pension is a vested one, and that it enters into the contract of employment when a man enters the police department. (*O'Dea v. Cook*, 176 Cal. 659 [169 Pac. 366].) From this it is argued that the amount of the prospective pension is fixed. This is fallacious, because if it were as the

---

[2]This holding in *Bakenhus* has not been abrogated by our holdings in *Eisenbacher v. Tacoma* (1958), *ante* p. 280, 333 P. (2d) 642, or *Letterman v. Tacoma* (1958), *ante* p. 294, 333 P. (2d) 650. The latter cases make clear that the right to a substantial pension is merely one of the elements of the contract entered into by the employee when he obtains employment.

defendants contend, an increase in salary while a man was on active duty would not carry with it, as it does, the right to a correspondingly increased pension upon his subsequent retirement. Under such circumstances there would be no difficulty in determining that *the right which was vested is the right to have the pension, not of a particular number of dollars,* . . . A similar contention, made in regard to another sort of contract, would be swept aside with little consideration. . . .' " (Italics mine.)

It is almost axiomatic that pension legislation must be liberally construed to achieve the beneficent purposes of such acts. Pension provisions are founded upon sound public policy with the object of obtaining the very best services from steady employees by offering to protect the employees and their dependents from economic insecurity upon retirement. See *Brummund v. Oakland* (1952), 111 Cal. App. (2d) 114, 244 P. (2d) 441; note: 99 Penn. L. Rev. 701.

Pension contracts are somewhat unique. The employee— by rendering long and faithful service and paying monthly contributions from his salary—*fully performs* his portion of the bargain before the city is called upon to fulfill its portion of the bargain. (During the respondents' tenure in their jobs, their contributions were increased by the legislature from time to time in recognition of the long-run trend toward higher prices—the recognition that pension payments would have to be greater than originally contemplated if they were to be adequate.) When the employee retires, it is then the city's turn to render faithful performance of its part of the bargain. In order to do that, the city should pay the employee what he bargained for—a substantial pension, sufficient to assure the retired employee a reasonable living during his retirement period.

The determination of what comprises a substantial pension is for the legislature to decide, subject only to judicial review of the reasonableness of their determination. The majority, in the instant case, recognizes that respondents' pensions are presently inadequate—that respondents no longer receive substantial pensions. Yet the majority strikes down a legislative attempt to provide respondents

with a substantial pension in fulfillment of respondents' contractual rights. I believe that the legislature not only had the power to increase respondents' pension payments without violating the constitution, but it had the duty to do so under the terms of the agreement with respondents.[3]

I believe the situation involved in this case is well stated by Justice Musmanno in his dissenting opinion in *Jameson v. Pittsburgh* (1955), 381 Pa. 366, 113 A. (2d) 454:

"It is also to be noted that the constitutional prohibition is against *extra* compensation which, of course, would be predicated upon the supposition that full compensation has already been paid. However, *when the payment actually made falls short of what was agreed upon, it cannot be said that the further payment is extra compensation.* The increased retirement benefits provided by the legislation under consideration merely adds to the three-fourths-filled milk bottle the extra fourth which has been withheld." (Italics mine.)

In *Christie v. Port of Olympia* (1947), 27 Wn. (2d) 534, 179 P. (2d) 394, this court faced an analogous situation and reached a result exactly contrary to the result reached in the majority decision in the instant case. The Port of Olympia had ratified a contract between the union and the

---

[3] Justice Musmanno, in his dissenting opinion in *Jameson v. Pittsburgh* (1955), 381 Pa. 366, 113 A. (2d) 454, puts it this way:

"But the legislation before us for interpretation does not award *extra* compensation, it authorizes *adjusted* compensation. It is not disputed that the purpose of the retirement system is to assure the retired employe a reasonable living during his retirement period. Nor can it be disputed that the shortened dollar of today cannot reach the standard of living which the law intended for the pensioner. With this established discrepancy, therefore, between the purpose of retirement and what has actually occurred, it is inescapable that an obligation devolves upon the employer to fill the breach of the resulting deficiency and to mend the impaired contract solemnly entered into. If the State had originally promised to settle upon its retired employes certain grants of land and then the land had become useless because of volcanic eruption, earthquake or tidal wave, it could not be urged that the government would not have an obligation to grant other usable land to those employes. If the State had agreed to pay its retired employes with the fruit of the trees that later became sterile, it could not be said that the State could plead payment by pointing to the desolate orchard of empty and withered limbs."

employers' association which required "that the men would remain on the job after October 1st, receiving currently the hourly rates they had been receiving, but ultimately, in addition thereto, such additional sums, if any, which the national war labor board, after a hearing of the dispute, might hold to be a fair and reasonable rate of pay for work done after October 1st." When the men requested their back pay, it was contended that payment would be in violation of Art. II, § 25 of the state constitution. This court disagreed and said:

"We think there is no merit in these contentions. The payments contemplated are neither gifts nor 'extra compensation.' Assuming for the present that the contract was legally made, the payments represent compensation which accrued in strict pursuance to a contract made before the work was done. It is true that the resolution providing for the payments is unhappily worded. It speaks of 'retroactive compensation,' but, plainly, it is merely deferred compensation that was provided for in the contract."

I think the reasoning of the court in the *Christie* case, *supra*, is apropos and controlling in the case at bar. That decision requires us to examine the contract to ascertain its intent. I believe the intent of the pension provisions of the contract was to provide each pensioner with a reasonable living allowance during his retirement.

"The Majority Opinion seems to proceed on the theory that constitutional provisions are iron-ribbed compartments built into a reinforced steel tabernacle. The history of the constitutional convention and the decisions of this Court rendered since 1874 would indicate, on the contrary, that the various provisions in the Constitution are not metallic cubicles; *rather they represent vast areas of moral principles which permit such cultivation as will produce provender, protection, and preservation for the people, restricted only by very specific prohibitions clearly and unequivocally expressed* . . . It seems obvious to me that the prohibition in Article . . . [II, § 25] was never intended to prohibit the Legislature from discharging a moral obligation to the servants of the State. The target of the prohibition was political favoritism. It was designed to prohibit the enrichment of individuals by rewarding them from the public treasury. The fact that the limitation is

worded in the singular number, rather than in the plural, adds particular emphasis to this interpretation." (Italics mine.) Justice Musmanno, dissenting, *Jameson v. Pittsburgh, supra.*

The statute is constitutional. *Christie v. Port of Olympia, supra; Home v. Souden* (1926), 199 Cal. 508, 250 Pac. 162; *Casserly v. Oakland, supra; Voigt v. Board of Education of Chicago* (1952), 413 Ill. 233, 108 N. E. (2d) 426; and see *State ex rel. Hudgins v. Public Employees Retirement Board* (1954), 58 N. M. 543, 273 P. (2d) 743; *Raines v. Board of Trustees of Illinois State Teachers' Pension & Retirement Fund* (1937), 365 Ill. 610, 7 N. E. (2d) 489; *Krebs v. Board of Trustees of Teachers' Retirement System* (1951), 410 Ill. 435, 102 N. E. (2d) 321, 27 A. L. R. (2d) 1434; *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 61 N. W. (2d) 903; *State ex rel. Holmes v. Krueger* (1955), 271 Wis. 129, 72 N. W. (2d) 734 (which demonstrates that the Wisconsin case relied on by the majority herein is no longer the law in Wisconsin).

The judgment should be affirmed.

ROSELLINI and HUNTER, JJ., concur with FINLEY, J.

MALLERY, J. (dissenting)—I dissent. The amendment adopted in 1958 was clearly remedial in character and intended to be operative as to every one from the time of its adoption regardless of when the particular individual may have retired.