STATE EX REL. BENJAMIN LEVINE *v*. RICHARD C. LEE ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 86667

Memorandum filed August 1, 1958

*Louis Feinmark,* of New Haven, for the plaintiff.

*George Crawford* and *Harold Mulvey,* both of New Haven, for the defendants.

DEVLIN, J.  The plaintiff, on June 11, 1957, filed an application with the retirement board of the city of New Haven requesting retirement benefits under Special Act No. 391, enacted by the General Assembly of the state of Connecticut on June 4, 1957.  On July 19, 1957, the board held a meeting and denied the application.  This action seeks to compel the board to grant the application on the ground that its ruling was illegal and in violation of the provisions of the special act.  The sole question is whether the plaintiff comes within the provisions of the retirement fund as amended.

Special Act No. 391 (28 Spec. Laws 494), passed over the governor's veto on June 4, 1957, provides: "An act concerning mandatory retirement of New Haven city employees after fifteen years' service. Section 8 of number 397 of the special acts of 1939 is amended by adding the following:  Any city employee who is not otherwise eligible to receive a retirement allowance under the provisions of this section and who, after reaching the age of fifty-five years and being a member of the retirement system at the time, and after at least fifteen years of continuous service, is obliged to retire involuntarily from such service, which involuntary retirement is not due to malfeasance or misfeasance in office, shall receive an annual retirement allowance equal to forty per cent of his average annual rate of pay for the last five years of his service, plus two per cent of

his average annual rate of pay for the last five years of his service for each full year of service in excess of fifteen years but in no event more than fifty per cent of his annual rate of pay for said last five years of his service. This act shall apply to any person retired on or after January 1, 1957, provided such person makes written application to the retirement board within one year after such involuntary retirement."

The first claim of the plaintiff is that he was obliged to "retire involuntarily from . . . service." The plaintiff was a member of the board of assessors, appointed to serve a five-year term from February 1, 1952. At the expiration of his term on January 31, 1957, he was not reappointed. The charter gives the appointive power to the mayor and limits the term to five years. A reappointment is necessarily a new employment, since the appointee is again sworn in to a faithful performance of his duties for the ensuing period.

Whether one can be involuntarily retired from an appointment having a definite term or tenure is the question. It would seem that one accepting an appointment which has a definite term does so with the understanding that at the end of that period his employment is automatically ended. Especially is this true where, as in this case, there is no hold-over provision.

In the popular sense, to retire means that at least part of the motive power creating the resulting situation originated in the person whose status is changed. "Children are put to bed, adults retire." It also presupposes the taking away of something against his will. At the end of the term, the plaintiff had nothing which could be the subject of such a taking; his employment was at an end due to the specific term. Failure of reappointment is not tanta-

mount to an involuntary retirement. *Hecht* v. *Crook,*
184 Md. 271, 282. His employment expired by its
own limitations. *Cole* v. *Marshall,* 6 N.J. Misc. 702.

Claim is made that the mere acceptance of an ap-
pointive office with a certain tenure does not carry
with it the further connotation that the appointee
voluntarily gives up the desire or wish for reappoint-
ment or continuation in office. There was evidence
to support his contention that he "not only did not
desire or will or wish to retire, but was actively
seeking reappointment and had been given reason to
believe that he would receive such reappointment."
However true that might be, his activities from 1954
on were directed in a different direction and cer-
tainly contradictory to the legally carrying on of the
duties of an assessor. On January 4, 1954, he applied
for an exemption from taxation up to the valuation
of $5000 on property owned by his wife and himself
in Fort Pierce, Fla. At that time he swore that he
was a bona fide citizen of the state of Florida and
that the property was his residence. Under Florida
law, actual occupancy of a home with intention to
remain there and make it the home of the family,
the place of their actual use and occupancy, is
essential to the homestead right. *Croker* v. *Croker,*
51 F.2d 11, 12.

This claim was renewed on January 3, 1955, the
plaintiff asserting, "I hereby declare I understand
the laws governing Homestead Exemption, including
penalty for filing false claims." On March 8, 1957,
another affidavit was filed and recorded in the public
records of St. Lucie County, Florida, stating "that
he formerly resided at New Haven, Conn., but that
his abode in Florida constitutes his predominant
and principal home, and affiant intends to continue it
permanently as such; affiant further declares that
he is an actual bona fide and legal resident of the
State of Florida, and the filing of this affidavit is to

be accepted by all persons or any Court as proof of such legal residence and permanent domicile." This evidence would seem to negate the claims made at the trial and, rather, support a finding of long-range preparation for a voluntary retirement or at least the withdrawal of his activities from this state.

It is the further claim of the plaintiff that he has satisfied the requirements of the act in that at the time of his application he was a member of the retirement system and had at least fifteen years of continuous service. His original employment with the city of New Haven started in August of 1937. He was admitted to the retirement system on January 1, 1938. This continued until June 25, 1939, when he withdrew and his contributions to the fund in the amount of $139.75 were returned to him. On January 8, 1942, he again applied, offering to pay the back amounts due. The retirement board granted his request, subject to a physical certification and the payment of past due contributions. Nothing was ever done to accomplish this.

At the time of his application in 1952, it was explained to him that, although he had been an assessor for five years, under the act an employee not under civil service who entered the service of the city after June 1, 1941, "may elect within the first year of his service to participate in the retirement fund, and failing such election he shall not thereafter be admitted to said fund unless he shall make an application to participate within two years next following and then only with the consent of the retirement board and after having passed a physical examination to be prescribed by the retirement board" (23 Spec. Laws 1063, § 2), and that it would be impossible to accept it unless it was made out on the basis of a new employment. His previous term had expired on January 31, 1952, and his reappointment on February 1 was considered as new employ-

ment. It was also explained to him that because of his age at that time he would never be able to acquire twenty years of service before reaching seventy or seventy-three, as required by the act, and he would have to come in on a limited basis. This was described as a disability basis requiring only ten years of service and providing a pension in case of permanent disability. The application was dated September 3, 1952, and gave the date of entering the service of the city as February 1, 1952. He was accepted on this basis and paid his back due contributions to February 1, 1952, and this was recorded as the date he entered the retirement system.

The plaintiff contends he was a member of the retirement system at the time he retired and there is no requirement of membership throughout the entire period of his employment. No requirements can be read into the act other than those set out. The result of such a construction would be to require some members to contribute during their entire period of employment and allow others to gain a pension after only a partial contribution. The inequity of such a situation is apparent.

The term "continuous service" as used in the act is defined as uninterrupted employment. Provision is made, however, where one seeks to return after absence from employment for over a year. Reinstatement in such a case is conditioned "upon payment to the funds of the retirement fund of contributions previously withdrawn, together with such an amount as will establish the proper actuarial reserve for that portion of the annuity reinstated." 23 Spec. Laws 293, § 8. Thus the continuous service rendered carries with it the corresponding obligation of continuous contribution. The failure of the plaintiff to contribute to the fund from 1937 to 1952 is not "continuous service" within the meaning of the act.

The presumption is that the legislature, in adopting an act, does so in view of existing relevant enactments and with the intention that the act be read with them so as to make one consistent body of law. *Wilson* v. *West Haven,* 142 Conn. 646, 654. This particular act was an amendment to the existing pension law. It must be read in connection with these other provisions. Basically, it sets out a contributory pension plan. All classes contribute the same percentage of their salary. The construction called for would treat one class differently from another. In such a case there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched. *Warner* v. *Gabb,* 139 Conn. 310, 314. There is none here. Admittedly, the act was designed to take care of one individual situation, and the construction sought would amount to the granting of an emolument or privilege to an individual or class without any purpose of serving the public welfare.

The defendants make the further claim that the plaintiff is not within the terms of the act because he was not an employee of the city at the time of the grant of his alleged right to receive the pension. His term expired on January 31, 1957, and the act was passed June 4, retroactive to January 1, 1957. By the weight of authority, statutes or ordinances, so far as they attempt to grant pensions to persons who at the time of their enactment have already retired from public office, are unconstitutional as amounting to gratuities for private purposes. Such a finding is made in the present case. Note, 142 A.L.R. 938.

The plaintiff has not substantiated his claims with the more credible evidence, and judgment may enter for defendants.