**STATE ex rel. Alton B. CLEAVELAND, Respondent,**

v.

**Christopher S. BOND, Governor of the State of Missouri, as Commissioner of Administration, Appellant.**

**No. 58337.**

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1975.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 10, 1975.

William D. Powell, Columbia, for respondent.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., John C. Klaffenbach, Asst. Atty. Gen., Jefferson City, for Christopher S. Bond, Governor of the State of Missouri, As Commissioner of Administration.

HOUSER, Commissioner.

The question for decision is whether the hereinafter italicized portions of §§ 476.520 and 476.570, RSMo 1969, V.A.M.S., granting retirement benefits retroactively to judges who ceased to hold office between September 3, 1970 and September 28, 1971, the effective date of these sections, are unconstitutional as an attempt to grant public money to a private person, in violation of Mo.Const. Art. III, § 38(a), V.A.M.S., or an attempt to grant extra compensation after services have been rendered, in violation of Mo.Const. Art. III, §§ 38(a) and 39(3).

The question arose in the course of a mandamus action brought by Alton B. Cleaveland, an ex-magistrate and probate judge, against Governor Christopher Bond in his capacity as commissioner of administration. Following issuance of the alternative writ, the filing of a return raising the

constitutional question and relator's reply, the cause was argued and submitted to the circuit court on stipulation. The court issued its peremptory writ ordering that relator's claim for retirement benefits be approved. The Governor, in the capacity aforesaid, has appealed.

The parties agree that relator is above the age of 65 years; that he has served in excess of 12 years as Probate Judge and Magistrate of Caldwell County; that he retired from office on December 31, 1970, upon expiration of his term; that his retirement occurred prior to the passage of the 1971 judicial retirement act; that on September 21, 1971 he applied for and attempted to exercise the option for retirement benefits under §§ 476.515 through 476.570, RSMo 1969, V.A.M.S. and more particularly §§ 476.520 and 476.570, and that the 1971 judicial retirement act became effective on September 28, 1971.

Section 476.520 provides: "Any person, sixty-five years of age or older, who has served in this state an aggregate of twelve years, continuously or otherwise, as a judge, and who, *after September 3, 1970,* ceased or ceases to hold office by reason of the expiration of his term, voluntary resignation, or retirement under the provisions of subsection 2 of section 27 of article V of the Constitution of Missouri may receive benefits as provided in sections 476.515 to 476.570. All judges required by the provisions of section 30 of article V of the constitution to retire at the age of seventy years shall retire upon reaching that age, and if they have served in this state an aggregate of twelve years, continuously or otherwise, as a judge, shall receive benefits as provided in sections 476.515 to 476.570. The twelve years requirement of this section may be fulfilled by service as judge in any of the courts covered, or by service in any combination as judge of such courts, totaling an aggregate of twelve years."

Section 476.570 provides: "Any judge who held office *on or after September 3, 1970,* and who is otherwise eligible, shall participate in the retirement system established by sections 476.515 to 476.570; except that, a judge *holding office on September 3, 1970,* shall have the option to elect to participate in the retirement system established by sections 476.450 through 476.510, RSMo 1969. The election shall be in writing on forms prescribed by the comptroller, shall be filed with him within sixty days after September 28, 1971, and shall be irrevocable. The provisions of sections 476.450 through 476.510, RSMo 1969, shall apply to all other persons qualifying thereunder."

Mo.Const. Art. III, § 38(a) provides: "The general assembly shall have no power to grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation, excepting aid in public calamity, and general laws providing for pensions for the blind, for old age assistance, for aid to dependent or crippled children or the blind, for direct relief, for adjusted compensation, bonus or rehabilitation for discharged members of the armed services of the United States who were bona fide residents of this state during their service, and for the rehabilitation of other persons. Money or property may also be received from the United States and be redistributed together with public money of this state for any public purpose designated by the United States."

Mo.Const. Art. III, § 39(3) provides: "The general assembly shall not have power: . . . (3) To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part."

From the standpoint of age, length of judicial service, and retirement after September 3, 1970, Judge Cleaveland is qualified and eligible for the benefits provided by the 1971 judicial retirement act, unless the constitutional challenge is sustained.

"Most courts hold that statutes which purport to grant pensions to persons already retired from public employment at the time of the enactment are unconstitutional as amounting to gratuities for private purposes,[1] or as within a prohibition against the giving of extra compensation to a public officer or employee after the services have been rendered,[2] or the like. * * *" 60 Am.Jur.2d Pensions and Retirement Funds § 40, p. 910. From our research and that of counsel the text might well have read "All courts but one hold * * *," for the only case to the contrary cited to us or to be found is the 4–3 decision of the Supreme Court of Colorado in Bedford v. White, 106 Colo. 439, 106 P. 2d 469 (1940), upholding the constitutionality of a statute authorizing payment of pensions to former Supreme Court justices who were not members of the court when the statute was enacted. A penetrating, indeed devastating, dissenting opinion points up the unsoundness of the reasoning of the majority opinion, which Justice Burke characterized as a "wilderness of words."

The reasoning of the courts which have considered this question irrefutably demonstrate that under analogous constitutional provisions retroactive retirement laws written to include public officers or employees not in the public service at the time of enactment are unconstitutional.

The justification and basis for the enactment of statutes providing retirement benefits for public officers and employees is the public benefit to be derived from (1) encouraging competent and faithful public officers and employees to remain in the service over prolonged periods and not to seek employment elsewhere, and (2) encouraging retirement from public service of "those who by devoting their best energies for a long period of years to the performance of duties in a public office or employment have, by reason thereof or of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physical or mental vigor. * * *

"But to be valid under constitutional requirements, the pensions must be conferred upon *persons who at the time* of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals, and a gift or gratuity." Dillon on Municipal Corporations, 5th Ed., § 430.

In Littleton v. Reed, supra, the Kentucky court, after stating that the public purpose which justifies the expenditure of public funds in the form of pensions is to induce competent persons to enter and remain in public service and to encourage retirement from service of those who have become incapacitated from performing official duties as well as they might be performed by younger persons, said, 456 S.W.2d 1.c. 696:

"Obviously no such purpose could be served by the payment of a pension to one who was not induced to enter or remain in public service, or who was not induced to retire by reason of such plan. Such compensation could not be declared 'in consid-

---

1. Citing State ex rel. Levine v. Lee, 21 Conn. Supp. 116, 145 A.2d 378; DeWitt v. Richmond County, 192 Ga. 770, 16 S.E.2d 579; State ex rel. Sena v. Trujillo, 46 N.M. 361, 129 P.2d 329, 142 A.L.R. 932; State ex rel. Smith v. Annuity and Pension Board, 241 Wis. 625, 6 N.W.2d 676; Annos., 27 A.L.R. 2d 1442, 1449, § 5 and 142 A.L.R. 938, 939. To which may be added the following: Mahon v. Board of Education, 171 N.Y. 263, 63 N.E. 1107 (1902); Lamb v. Board of County Peace Officers Retirement Commis- sion, 29 Cal.App.2d 348, 84 P.2d 183 (1938); Littleton v. Reed, 456 S.W.2d 695 (Ky.1970); People v. Abbott, 274 Ill. 380, 113 N.E. 696 (1916); Meade v. Inhabitants of Acton, 139 Mass. 341, 1 N.E 413 (1885); State v. City of Minneapolis, 174 Minn. 594, 219 N.W. 924 (1928). See also dictum in Dewolf v. Bowley, 355 Ill. 530, 189 N.E. 893, 895 [5] (1934).

2. Citing State ex rel. Sena v. Trujillo, supra.

eration of public service' because no public service was performed therefor. To appropriate public funds in recognition of some past public service for which compensation has already been paid is to grant a gratuity. * * * [I]f the statutory subsection here involved were upheld as constitutional then the legislature could compensate by way of pensions or otherwise any and all persons who had in the past performed some public service. This would constitute a diversion of public funds to the granting of emoluments for something other than in legal consideration of public services. Section 3 of our Constitution forbids just that, and the Chancellor correctly so decided."

In State ex rel. Sena v. Trujillo, supra, a former clerk of the Supreme Court of New Mexico left the service of the State prior to the enactment of a statute granting a pension to every person who had served the State for 30 consecutive years and who has passed the age of 65 years. Relator met the service and age requirements. The constitutional provisions of New Mexico were similar to those of this State. In ruling the act unconstitutional the court observed, 129 P.2d l.c. 333[2]:

"But, obviously appellee could not have come into the service, stayed in it, nor left it because of the Act of 1941. When we adopt the theory that there must be some relation between the service and the reward through pension, and some reasonable theory of public benefit accruing by virtue thereof, as we do, appellee must fail."

Referring to the inducements to serve in teaching capacities in a system of pensions the Court of Appeals of New York, in Mahon v. Board of Education, supra, said, 63 N.E. l.c. 1109:

"But these considerations have no application to the case of officers or employes who are not in service at the time the pension system is established or in force. As to such persons the grant of a pension is a mere gratuity."

In Lamb v. Board of County Peace Officers Retirement Commission, supra, under a constitutional provision substantially the same as our Art. III, § 39(3), it was held that a provision in a retirement act making it retroactive as to past services of a police officer did not authorize granting a pension to an officer who was out of the service prior to the enactment of the act, since the pension was a gratuity; "because, due to his permanent disability, he has not rendered any service to the state or any subdivision thereof subsequent to the enactment of the law authorizing the pension which he desires." 84 P.2d l.c. 184.

In State ex rel. Levine v. Lee, supra, the Connecticut Superior Court said, 145 A.2d l.c. 381[6]:

"The defendants make the further claim that the plaintiff is not within the terms of the act because he was not an employee of the city at the time of the grant of his alleged right to receive the pension. His term expired on January 31, 1957, and the act was passed June 4, retroactive to January 1, 1957. By the weight of authority, statutes or ordinances, so far as they attempt to grant pensions to persons who at the time of their enactment have already retired from public office, are unconstitutional as amounting to gratuities for private purposes."

In Dewolf v. Bowley, supra, it was conceded by counsel on both sides that "pension acts, to be valid, can confer pensions only upon persons who at the time the General Assembly enacted the statute were, or thereafter became, members of the class upon whom the pension is conferred, and that pensions cannot be conferred upon persons who had retired from service prior to the enactment of the pension act. [Citing cases.]" 189 N.E. l.c. 895.

In Judge Cleaveland's case there could be no public benefit by allowing his claim, nor could his service record have been affected by the act. He had already entered the service, served a prolonged time (32

years), and retired several months prior to the passage of the act. Obviously he was not encouraged to enter, remain in or leave the service because of the inducement of benefits under the act. The only possible justification for including him would be on some theory of reward for past services rendered, which would constitute the grant of extra compensation to a private individual after the service had been rendered, or in other words a gratuity. To rule that the General Assembly has the power retroactively to reward an ex-judge by extending retirement benefits under the circumstances of this case would open the door to the squandering of public money referred to in Kizior v. City of St. Joseph, 329 S. W.2d 605, 610[4] (Mo.1959).

■ We conclude that the allowance of retirement benefits to relator under these sections would constitute the granting of public money to a private person in violation of § 38(a) supra, and the granting of an extra allowance to a public officer after service had been rendered in violation of § 39(3) supra. The retroactive provisions of the designated sections, as applied to Judge Cleaveland, are unconstitutional.

■ But, says relator, the sections in question were authorized by the adoption by the people of a new Article V of Mo. Const. at a special election August 4, 1970. Section 30 of new Article V, after providing for mandatory retirement at age 70 of judges appointed under the nonpartisan court plan, provides that "All other members of the judiciary shall be subject to and participate in such provisions as to retirement as may be provided by law." Section 31(1) provides that the effective date of the amendment shall be January 1, 1972 and that between the date of the adoption of the amendment and its effective date the general assembly "may enact such laws . . . as may be necessary to give effect to its provisions." Relator contends that § 30, Art. V is an exception to the general prohibitions of §§ 38(a) and

39(3), Art. III and therefore the judicial retirement act of 1971 is constitutional under the rule that a state constitution is not a grant of power but only a limitation thereof, and that except for prescribed limitations the power of the legislature is unlimited and absolute; that the retirement act of 1971 comes within the wording: "such provisions as to retirement as may be provided by law."

There is no merit in this contention. Respondent admits that all provisions of §§ 476.515 through 576.570, with the exception of the references in §§ 476.520 and 476.570 to the date September 3, 1970, are valid, constitutional exercises of the general powers of the General Assembly. In the second place, the retirement provisions enacted in 1971 do not depend upon Mo.Const. Art. V, §§ 30 and 31 for their vitality. They are authorized under the general powers of the General Assembly because they serve a legitimate public purpose. If the General Assembly had intended to found the retirement act of 1971 on Art. V, §§ 30 and 31 it would have fixed January 1, 1972 as the effective date of that act, or indicated such an intention in some other manner, but it did not do so.

■ Next, relator asserts the the benefits provided for in the retirement act of 1971 serve the public interest and are not mere gratuities because they "have a powerful influence in inducing long and continued service" by the retired judiciary in performing such duties as may be assigned to them pursuant to Rule 11.07, V.A.M.R., promulgated by the Supreme Court, which authorizes the Court to "call for temporary duty any eligible retired judges or commissioners to serve in any appellate or circuit court when this Court finds the administration of justice so requires." This assertion cannot be sustained for the reason that Rule 11.07 has no application to judges who retire under the provisions of the retirement act of 1971. It applies only to those judges and commissioners who

upon retirement, resignation, etc. elect or elected to be appointed as special commissioners for life with an annual compensation of one-third the salary provided by law for the office, under the provisions of §§ 476.450 to 476.510, RSMo 1969, V.A.M.S. Judges who retire under the provisions of the retirement act of 1971 have no statutory obligation to render further service.

 Finally, relator contends that the sections in question may be sustained on the basis that the 1971 retirement act is a provision for old age assistance; that "inasmuch as the subject act provides retirement benefits to retired members of the judiciary who are in excess of sixty-five years of age, it is one for old age assistance and, therefore, specifically excepted from the general prohibition of Section 38(a) and 39(3), Article III * * *"; and that it is a provision for "direct relief for the financial plight into which members of the judiciary, who have served the State of Missouri so faithfully * * * for such grossly inadequate recompense, have been plunged," which may be sustained under the exclusion from Art. III, § 38(a) of "general laws providing * * * for direct relief." These contentions merit scant attention, except to say that the judicial retirement act of 1971 does not depend upon and bears no relation to these exclusions. That act was not intended or framed as a measure to provide old age assistance or direct relief to judges. Its justification under the constitution is based upon service to the state and benefit to the public as above demonstrated. Old age and direct relief laws are drawn on an entirely different theory, namely, appropriation of public funds for the benefit of needy individuals.

Accordingly, the peremptory writ of mandamus is vacated and quashed, the judgment is reversed, and the cause is remanded with directions to dismiss the petition for the writ of mandamus and enter judgment in favor of appellant.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.