750 P.2d 1110

**STATE of New Mexico, ex rel. Abe RODRIGUEZ, Director, Department of Alcoholic Beverage Control, and Steven Schiff, District Attorney of the Second Judicial District, Plaintiffs–Appellees,**

v.

**AMERICAN LEGION POST NO. 99, CLUB LICENSE NO. 1626, et al., Defendants–Appellants.**

**Nos. 9436, 9527 and 9530.**

Court of Appeals of New Mexico.

Nov. 5, 1987.

Certiorari Denied Feb. 26, 1988.

Hal Stratton, Atty. Gen., Holly A. Hart, John M. Paternoster, Asst. Attys. Gen., Santa Fe, for plaintiffs-appellees.

John P. McCollum, Albuquerque, for defendant-appellant, American Legion Post No. 99.

Ken Cullen, Albuquerque, for defendant-appellant, Solo Club, Inc.

Michael E. Vigil, Marchiondo, Vigil & Voegler, P.A., Albuquerque, for defendants-appellants.

**OPINION**

BIVINS, Judge.

Appellant organizations (Clubs) and appellees State of New Mexico and Schiff (state) disputed the application of the Bingo and Raffle Act, NMSA 1978, Sections 60–2B–1 to –14 (Repl.Pamp.1981 & Cum.Supp. 1987) (the Act) to certain activities of the Clubs. The dispute was submitted to the District Court of the First Judicial District as an action for declaratory judgment filed by the state. The parties entered into a stipulation of facts and submitted cross-motions for summary judgment. After reviewing the parties' arguments, the district court granted the state's motion and issued a declaratory judgment holding that the Clubs' activities constituted gambling not authorized by the Act. These appeals ensued. On September 23, 1986, we issued an order consolidating the cases for purposes of appeal and staying the declaratory judgment pending the outcome of the appeal.

**ISSUE**

The only issue on appeal is whether the Clubs' video gaming machines are protected by the Act. The Clubs contend that their practice of awarding prizes and cash based on the results of the games constitutes the operation of games of chance sanctioned by the Act. We disagree and affirm the trial court.

**FACTS**

In 1981 the New Mexico Legislature passed the Act. It allows certain nonprofit organizations to conduct games of chance commonly known as bingo and raffles, as long as the entire net proceeds of any game are spent for educational, charitable, patriotic, religious or public-spirited purposes. §§ 60–2B–3 and –8.

Following the passage of the Act, the Clubs placed electronic or mechanical video gaming machines on their premises for the use of their customers. These machines award free games to lucky players, and the Clubs convert those free games into cash or prizes by, for example, paying the winner 25¢ for each free game. The state discovered this practice and agreed to refrain from immediate prosecution and instead to file an action for a declaratory judgment to allow the courts to determine the legality of the Clubs' practice under the Act. To expedite this action, the parties stipulated to the following key facts: (a) the Clubs have video gaming machines on their premises; (b) the games are operated by putting a coin or tokens (purchased from the Clubs) into a slot; (c) the players who win free games from the machines are awarded prizes in cash or merchandise; (d) the award of free games, and thus of the prizes, is determined by chance, although perhaps accompanied by some skill; (e) the machines are available for play during the entire time in which the Clubs are open to members; and (f) the Clubs are all licensed under the Act or have applied for licenses under the Act.

The parties demonstrated for the trial court one type of machine found in the Clubs. This machine was an electronic draw poker game; the machine deals the player a hand that appears on the screen. The player can discard cards and draw new ones, or stand pat, by pressing appropriate buttons. The game ends after one deal/discard/draw sequence. If at the end of the game the player's hand includes a pair of jacks or better, the player has won one or more free games. The number of free games depends on the hand; two pairs are worth two games; three-of-a-kind, three; and so on up to a maximum of 250 free games for a royal flush. The player can then play those free games or cash them in with the bartender for 25¢ per game or, in some Clubs, merchandise. Thus, a player can potentially win $62.50 on one 25¢ play of the machine. This game allows one player to play up to twenty games at one time, which means the player can risk $5.00 on each play. Not all of the Clubs' games are poker games; other games include electronic blackjack, bingo, and simulated horse-racing, as well as games not described in the record.

## DISCUSSION

The Act defines "game of chance" as

> that specific kind of game of chance commonly known as bingo or lotto in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random and that specific kind of game of chance commonly known as raffles which is conducted by drawing for prizes or the allotment of prizes by chance or by the selling of shares, tickets or rights to participate in the game[.]

§ 60–2B–3(M). The Clubs construe this provision to mean that the legislature authorized three types of raffles: (1) drawing for prizes; (2) allotment of prizes by chance; (3) selling of shares, tickets or rights to participate in the game. They then argue that their machines allot prizes by chance by awarding free games that can be converted into prizes. Thus, the Clubs contend their operations of these games are "raffles" under the Act.

■ The Clubs bolster their position by referring to the statutory and common-law definitions of "lottery" found in NMSA 1978, Section 30–19–1(C) (Cum.Supp.1987) and in cases such as *State v. Jones,* 44 N.M. 623, 107 P.2d 324 (1940). These definitions state essentially that a lottery exists any time one pays consideration for an opportunity to win a prize awarded by chance. The Clubs argue that the definitions of "lottery" mirror the "allotment of prizes by chance" phrase in the definition of raffles. Therefore, the Clubs contend the legislature must have had the definitions of lottery in mind when defining raffles. This argument would make the definitions of "lottery" and "raffle" synonymous; as such, any scheme for the distribution of prizes by chance in exchange for consideration (the lottery definition) would be a raffle. Thus, the Clubs conclude the phrase "commonly known as raffles" would include any game in which consideration was paid to win a prize by chance. Under this broad definition of "commonly known as raffles," the Clubs' activities would be allowed under the Act. To support their broad definition of "raffles," the Clubs cite numerous foreign cases. We find these cases unpersuasive. We conclude that the language of our statute, properly construed, provides a resolution of the appellate issue. *See generally* Annot., *Validity and Construction of Statute Exempting Gambling Operations Carried on By Religious, Charitable, or Other Nonprofit Organizations from General Prohibitions Against Gambling,* 42 A.L.R. 3d 663 (1972).

■ If we were to adopt the Clubs' broad definition of "raffles," any game in which a prize is awarded by chance would qualify as a raffle. Organizations licensed under the Act could operate slot machines, roulette wheels, many types of card games, and, in fact, virtually any sort of gambling device as long as the net profits were spent for lawful purposes as defined in the Act. We reject this interpretation. It is not reasonable to assume that the legislature would authorize such widespread gambling

without explicitly saying so, and this court must presume that the legislature acted reasonably. *Sandoval v. Rodriguez*, 77 N.M. 160, 420 P.2d 308 (1966).

"A statute should be construed in light of the purpose for which it was enacted." *State v. Rodriguez*, 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.1984). This court "must give words used in a statute their ordinary meaning unless the legislature indicates a different intent." *Id.* If a statute is unambiguous, we apply the literal meaning of the words of the statute. *Hutchinson v. State*, 89 N.M. 501, 554 P.2d 663 (1976). The rule in New Mexico is that specific statutes control over general statutes. *State ex rel. Dep't of Human Servs. v. Manfre*, 102 N.M. 241, 693 P.2d 1273 (Ct.App.1984).

A narrower reading of the definition in question is both possible and reasonable. In addition, it is supported by the grammatical construction of the phrase. Under this reading, a raffle is that specific kind of game of chance commonly known as raffles, which is conducted: (1) *by* drawing for prizes or the allotment of prizes by chance; or (2) *by* the selling of shares, tickets or rights to participate in the game. The absence of the word "by" before "the allotment" indicates that this phrase is a part of the phrase "by drawing for prizes or the allotment of prizes by chance" and does not stand alone as a complete phrase. The allotment of prizes by chance is not a separate method of conducting a lottery but is something to be accomplished by a drawing, which is the traditional form of raffle. This construction avoids the overly broad interpretation of the term "raffle" advocated by the Clubs, and is a reasonable interpretation of the statute.

■ Some of the Clubs maintain that their activity is authorized by the Act because it is "bingo" as defined in the Act. The Clubs base their argument on *Treasure State Games, Inc. v. State*, 170 Mont. 189, 551 P.2d 1008 (1976), in which the Montana court interpreted a definition of "bingo" substantially similar to our Act's definition of that term. The *Treasure State* court held that electronic bingo and

keno games, which in all respects duplicated one version of the live game of bingo, fell within the statutory definition of bingo. In the case before us, the machines in question do not all duplicate a version of the live game of bingo. Some of them, as noted earlier, duplicate draw poker and blackjack games. In addition, the Montana statute interpreted by the court is less restrictive than New Mexico's Act. It does not limit operation of bingo and raffles to nonprofit entities, but allows games to be run for profit. Also, it contains minimal restrictions on the operation of the bingo games, while New Mexico's Act details the way in which the games must be played. For example, our Act mandates that all objects or balls must be in the receptacle before each game begins; that the caller must be present in the room containing the greatest number of players; that all numbers shall be announced audibly; and so on. *Compare* Mont.Code Ann. §§ 23–5–401 to –431 (1987) *and* §§ 60–2B–1 to –14, particularly § 60–2B–8.

Given the foregoing considerations and reading our Act as a whole, *see General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703 P.2d 169 (1985), it is plain that the Clubs' activities are not "bingo" within the meaning of the Act.

The Clubs argue that public policy considerations mandate holding in their favor. They contend they earn no pecuniary profit from the machines but spend the net proceeds on charitable causes such as youth sports leagues and Christmas baskets for needy people. Notwithstanding the value of the Clubs' charitable activities, we note that a countervailing public policy exists, which is to restrain and discourage gambling except in very limited circumstances. *Schnoor v. Griffin*, 79 N.M. 86, 439 P.2d 922 (1968); *see also Harriman Inst. of Social Research, Inc. v. Carrie Tingley Crippled Children's Hosp.*, 43 N.M. 1, 6, 84 P.2d 1088, 1091 (1938) ("[T]he gambling spirit feeds itself with as much relish upon a charity lottery as upon any other kind."). The legislature passed the Act to allow limited forms of gambling of a more or less innocuous nature, as long as the proceeds

were spent to benefit the public. The statutory construction urged by the Clubs would authorize them to conduct almost any type of gambling activity. Such an interpretation is contrary to public policy and the Act as written, and we will not adopt it. In so holding, we are restricted, as a reviewing court, by the principles of statutory construction referred to above. We must construe the language of the Act based on these principles. This court does not legislate. *Varos v. Union Oil Co. of Cal.*, 101 N.M. 713, 688 P.2d 31 (Ct.App. 1984). If the Clubs seek a different result, that is a matter for legislative therapy, not judicial surgery. *Id.*

### CONCLUSION

We hold that the Clubs' practice of awarding cash or merchandise prizes for free games won on the electronic video machines in question does not constitute the operation of games of chance under the Act. Therefore, the declaratory judgment issued by the trial court is affirmed. The stay we entered on September 23, 1986 shall continue in effect until mandate has issued. We award no costs.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.