857 P.2d 761

**Lidio G. RAINALDI, Petitioner–Appellee,**

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD, et al., Respondents–Appellants.**

**No. 20138.**

Supreme Court of New Mexico.

June 14, 1993.

Rehearing Denied July 26, 1993.

Tom Udall, Atty. Gen., Andrea B. Buzzard, Asst. Atty. Gen., Santa Fe, for appellants.

Marchiondo & Vigil, Michael E. Vigil, Albuquerque, for appellee.

## OPINION

RANSOM, Chief Justice.

Magistrate Lidio Rainaldi claims entitlement to retirement benefits, prospectively and retroactively from January 1, 1987, under the Public Employees Retirement Act in effect at the time this lawsuit was initiated, NMSA 1978, Sections 10–11–1 to –41 (Repl.Pamp.1983 & Cum.Supp.1986).[1] On April 30, 1987, the Public Employment Retirement Board, a state agency created in the Act and assigned the tasks of effecting the provisions of the Act and of managing the Public Employees Retirement Association (PERA), granted retirement benefits to Judge Rainaldi; but on May 11, upon advice from the Attorney General, the

---

**1.** The Act was repealed and re-enacted in 1987. *See* 1987 N.M. Laws, ch. 253, § 140 (codified at NMSA 1978, §§ 10–11–1 to –140 (Repl.Pamp.1992)). That revision of the Act took effect after this lawsuit was instituted and is not applicable to this case.

Board rescinded that decision. Judge Rainaldi filed suit in the eleventh judicial district against the Board and its members in their official and individual capacities seeking a writ of mandamus, declaratory judgment, and injunctive relief. The Board appeals the ruling of the district court in favor of Judge Rainaldi, under which the court granted a permanent writ of mandamus and ordered the Board to pay the contested benefits. Although appellate jurisdiction in this Court has not been properly alleged or shown, we determine we have jurisdiction under NMSA 1978, Section 34–5–14(A) (Repl.Pamp.1990) (Supreme Court has plenary appellate jurisdiction except where specifically vested by law in Court of Appeals), and proceed to decide the matter. *See* NMSA 1978, § 34–5–10 (Repl.Pamp.1990) (appellate court's determination of jurisdiction is final). We reverse the declaratory judgment and vacate the writ of mandamus.

*Facts.* In 1986, as he had for a long time, Judge Rainaldi held two part-time jobs as a municipal judge for the City of Gallup and as a magistrate judge for McKinley County. Both of his employers, the city and the state, were affiliated public employers under the Act. Judge Rainaldi had belonged to PERA for over thirty years, and he was eligible for retirement and a retirement annuity.[2] In September 1986, Judge Rainaldi submitted his resignation from his position as a municipal judge. While it is not clear exactly when his resignation became effective, it is clear that he did not work or receive compensation as a municipal judge any later than December 30, 1986, the next to last work day of the year. That Fall, he had travelled to Santa Fe to learn from Board officials what steps he should take to begin receiving his annuity payments. Initially, although standing as an unopposed candidate for re-election to the magistrate's position in the general

election of November 1986, Judge Rainaldi contemplated retiring from both of his judicial positions and collecting his retirement annuity. Benny Armijo, a deputy director of the Board, advised Judge Rainaldi, however, that he could begin collecting his retirement annuity if he were to retire from his municipal judgeship, complete a break in his service as a magistrate, and then resume work as a re-elected magistrate. Judge Rainaldi contends that he accordingly completed a break in service from his magistrate position before beginning another term on January 1, 1987. The Board disputes that a break in service was proved. In connection with his magistrate position, the court made no finding that there was a break in service, but did find that Judge Rainaldi requested in December 1986 that his name be deleted from the PERA membership rolls effective December 30, 1986.

■ *Jurisdictional issues.—Jurisdiction in the eleventh judicial district.* The Board challenges the propriety of bringing this action in the eleventh judicial district rather than in the first judicial district where the Board sits. It couches its argument in terms of a challenge to the court's subject-matter jurisdiction, citing to the New Mexico Constitution to support its claim that the eleventh judicial district court was without jurisdiction.

The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and *appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts,* and supervisory control over the same.

N.M. Const. art. VI, § 13 (emphasis added). The Board points out that all its decisions relative to this matter were made in Santa

---

**2.** *See* § 10–11–1(F) (Cum.Supp.1986) (defining affiliated public employer); § 10–11–1(G) (Cum.Supp.1986) (defining employee); § 10–11–1(I) (Cum.Supp.1986) and § 10–11–9 (Repl.Pamp.1983) (defining a member of PERA); § 10–11–1(Z) (Cum.Supp.1986) (defining retirement as member's withdrawal from service of an affiliated public employer with an

annuity granted under the Act); § 10–11–1(T) (Cum.Supp.1986) (defining annuity as an annual amount, payable to retiree in monthly installments); § 10–11–22(A) (Cum.Supp.1986) (allowing member to retire for superannuation on or after reaching voluntary retirement date); § 10–11–1(Y) (Cum.Supp.1986) (stating requirements of voluntary retirement date).

Fe. The Board cannot persuasively argue, however, that its actions denying benefits to Judge Rainaldi were taken as an inferior court or tribunal. Legislatively-created boards, while clothed with certain quasi-judicial powers to administer agencies, are not courts, and in this instance the Board was not acting in its quasi-judicial capacity. *See State ex rel. Hovey Concrete Prods. v. Mechem,* 63 N.M. 250, 258, 316 P.2d 1069, 1074 (1957) (Sadler, J., dissenting) (stating that the legislature did not create a court when it created a board, even though it invested the board with certain quasi-judicial powers), *overruled and dissenting opinion adopted by Wylie Corp. v. Mowrer,* 104 N.M. 751, 753, 726 P.2d 1381, 1383 (1986). The Board's decision to reverse its grant of benefits to Rainaldi was not rendered after a hearing with any of the trappings required by due process, e.g., notice, hearing, and opportunity to present witnesses. *See National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 285–86, 756 P.2d 558, 565–66 (1988) (reasonableness of notice and procedures followed is essential to due process). In fact, the reversal came after a closed-door executive committee session held at the request of the attorney general's office. This case did not originate as an appeal, but as an action for declaratory relief.[3] The Board never asserted either claim or issue preclusion arising out of any quasi-judicial proceedings in any inferior tribunal. Because the Board did not act as an inferior court or tribunal in denying benefits to Judge Rainaldi, the district court's jurisdiction was not limited by Article VI, Section 13. *See Peisker v. Chavez,* 46 N.M. 159, 164, 123 P.2d 726, 729 (1942) (jurisdiction of district courts not limited by Constitution except as to appellate jurisdiction of cases originating in inferior courts). The Board has not identified any other constitutional provision excepting this matter from the general jurisdiction of the district courts.

Judge Rainaldi sought a declaration that he was entitled to collect retirement benefits and a writ of mandamus to enforce that right. Jurisdiction for a declaratory judgment is found in the Declaratory Judgment Act, NMSA 1978, Sections 44–6–1 to –15. Section 44–6–4 provides that "[a]ny person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." Section 44–6–13 provides that the state "or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of ... any of the laws of the State of New Mexico or the United States, or any statute thereof." Judge Rainaldi properly sued the Board seeking a determination and declaration of his rights to retirement benefits under the Public Employees Retirement Act. Jurisdiction over the cause, not being excepted by any constitutional provision, was within the grant of general jurisdiction to district courts, including the courts of the eleventh district.

—*Mandamus was an appropriate remedy.* The district court's jurisdiction in a declaratory judgment case extends to issuance of appropriate writs in support of its judgment. *See* § 44–6–9 (granting district courts the power, *inter alia,* to issue writs based on the court's declaratory relief); *see also State ex rel. State Highway Comm'n v. Quesenberry,* 72 N.M. 291, 293, 383 P.2d 255, 256 (1963) (writ of mandamus compelling state agency to act was ancillary to and in aid of judgment, which gave court jurisdiction over the case).

 The Board, however, attacks the propriety of a writ of mandamus as the remedy. "[M]andamus lies to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law and where there is

---

**3.** In the procedure since established by the legislature for appealing Board decisions to deny benefits, a claim for benefits is first subject to a Board hearing that results in a final decision.

*See* NMSA 1978, § 10–11–120 (Repl.Pamp.1992). Appeals from final decisions of the Board are to be brought in the first judicial district. *Id.*

no other plain, speedy and adequate remedy in the ordinary course of law." *Lovato v. City of Albuquerque*, 106 N.M. 287, 289, 742 P.2d 499, 501 (1987); *see* NMSA 1978, § 44-2-4 (writ of mandamus may be issued to compel performance of an act specially enjoined by law as duty of office); § 44-2-5 (mandamus shall not issue where there is a plain, speedy, and adequate remedy in the ordinary course of law); *Concerned Residents for Neighborhood, Inc. v. Shollenbarger*, 113 N.M. 667, 669, 831 P.2d 603, 605 (Ct.App.1991) (discussing difference between writs of mandamus and certiorari, Court stated that mandamus lies to enforce legal right against one having legal duty to perform an act or to compel performance of ministerial duty that one charged with its performance refuses to perform), *disapproved of by Regents of Univ. of New Mexico v. Hughes*, 114 N.M. 304, 310, 838 P.2d 458, 464 (1992) (holding decisions regarding transfer of liquor licenses, such as the one in *Concerned Residents*, are reviewable by statutory appeal). The act compelled by a writ of mandamus "must be ministerial, that is, an act or thing which the public official is required to perform by direction of law upon a given state of facts being shown to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case." *Lovato*, 106 N.M. at 289, 742 P.2d at 501. Mandamus is used to enforce an existing right, not to resolve material issues of fact. *Concerned Residents*, 113 N.M. at 670, 831 P.2d at 606 (citing *Rivera v. Nunn*, 78 N.M. 208, 430 P.2d 102 (1967), *State ex rel. State Highway Comm'n v. Quesenberry*, 72 N.M. 291, 383 P.2d 255 (1963), and *State ex rel. Black v. Aztec Ditch Co.*, 25 N.M. 590, 185 P. 549 (1919)).

A writ of certiorari, on the other hand, lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally, and no appeal or other mode of review is allowed or provided. *See Morris v. Apodaca*, 66 N.M.

421, 422, 349 P.2d 335, 336 (1960); *Concerned Residents*, 113 N.M. at 671, 831 P.2d at 607. Certiorari reviews a performed duty, while mandamus compels an unperformed ministerial duty. 14 Am. Jur.2d *Certiorari* § 4 (1964). "Certiorari is merely a writ of review to determine legality; mandamus is a coercive remedy." *Id.* at 781.

It is true, as the Board argues, that we have held that certiorari may be the only method available for reviewing the actions of a state board where no statutory review is provided.[4] *See, e.g., Roberson v. Board of Educ.*, 78 N.M. 297, 300, 430 P.2d 868, 871 (1967) [*Roberson II*] (reviewing local board of education's act of discharging contract teacher after state board of education had affirmed the dismissal); *Concerned Residents*, 113 N.M. at 668, 831 P.2d at 604 (petitioners sought review of action taken by Director of the Alcohol and Gaming Division, i.e., approval of the transfer of a liquor license after public hearings had been held). In the cases cited, however, either an affirmative action already had been taken, or some type of hearing had been held and the action or hearing was reviewable.[5] In the *Roberson* case the plaintiff properly sought, during the course of the dispute, both a writ of mandamus and a writ of certiorari. The litigation began as a petition for a writ of mandamus to compel the local school board to recognize an employment contract it had entered into and to prevent any hearings on the plaintiff's re-employment. *See Roberson II*, 78 N.M. at 298, 430 P.2d at 869. The action was first appealed to this Court for review of the writ of mandamus issued by the district court in *State ex rel. Roberson v. Board of Educ.*, 70 N.M. 261, 372 P.2d 832 (1962). *See Roberson II*, 78 N.M. at 298, 430 P.2d at 869. In the first appeal, this Court ordered the district court to modify the writ that it had issued in order to allow the local board of education to

---

4. Such a statutory method is now in place. NMSA 1978, § 10–11–120(B) (Repl.Pamp.1992).

5. As noted above, this Court has recently held the type of decision reviewed by certiorari in

*Concerned Residents* is subject to direct appeal. *See Regents of Univ. of New Mexico v. Hughes*, 114 N.M. at 310, 838 P.2d at 464.

hold a hearing on the termination. *See id.* After a hearing, the local school board again refused to honor the contract. The plaintiff appealed for review to the state board of education, which affirmed. The plaintiff then sought review of the state board's affirmance, but there was no statutory appellate procedure in place. The school board hearing provided a record for this Court to review, thus the plaintiff was able to seek review of the hearing with a writ of certiorari. Under those circumstances, we held that a writ of certiorari was the only means to review the action of the state board. *Id.* at 299–300, 430 P.2d at 870–71. A writ of mandamus to the state board would not have been appropriate after the hearing since there was a record to review and there was no affirmative action for the state board to take—the state board was not in a position to reinstate the plaintiff's contract. In her first attempt to force the school board to honor her employment contract, however, the plaintiff had appropriately sought a writ of mandamus in order to compel the board to perform an act that the teacher hoped to show was required by law.

■ Initially, Judge Rainaldi sought a declaratory judgment to establish his entitlement to begin receiving his retirement annuity. Because Judge Rainaldi was able to satisfy the district court that the facts supported his position and that the Board was required to perform by direction of law regardless of its own opinion as to the propriety or impropriety of doing so, the coercive nature of mandamus was entirely appropriate. *See Lovato*, 106 N.M. at 289, 742 P.2d at 501.

■ *Annuitants who become elected officials.* Upon terminating employment with a qualified public employer, after filing a written application for retirement with PERA, and upon meeting certain other conditions, a retiree can begin receiving the retirement annuity he has earned. The retiree becomes an annuitant once he or she is receiving an annuity granted under the Act. Section 10–11–1(L) (Cum.Supp. 1986). If a PERA annuitant again becomes employed by a PERA affiliated employer, payments being made to the annuitant are suspended and he or she again becomes a contributing member of PERA. Section 10–11–22(D) (Cum.Supp.1986). An exception is made to the rule of Section 10–11–22(D) in Section 10–11–9(E) (Repl.Pamp.1983) (the "elected official exception"): [6]

An annuitant retired under the provisions of Section 10–11–22 NMSA 1978 who becomes an elected official on or after January 1, 1981, including those officials elected to serve a successive term commencing January 1, 1981, may continue to receive his annuity without suspension of benefits during the term of office for which he was elected; provided that the annuitant files with the retirement board, within thirty days of becoming an elected official or within thirty days from the effective date of this act, an irrevocable exemption from membership for the official's term of office.... If no exemption is filed as provided herein, the annuitant's benefits will be suspended, and he will again become a contributing member as provided [elsewhere in the Act].

Judge Rainaldi was told that if he retired from his municipal judgeship, by having a break in service from his magistrate position he could become an annuitant. He was told that once he was an annuitant he could resume his magistrate position and still collect his annuity by using the elected official exception. Judge Rainaldi admits that during any break in service he had no intention of retiring from his magistrate position; the only purpose was to become an annuitant so that he could begin receiving his retirement annuity while continuing to work for a PERA affiliated employer. While it is questionable that Judge Rainaldi became an annuitant before January 1, 1987, he did not, in any event, *become* an elected official on that date so as to qualify

**6.** The current version of the provisions for suspension of benefits to an annuitant who is again employed by a qualified public employer and the elected official exception are found in NMSA 1978, Section 10–11–8 (Repl.Pamp.1992), Paragraphs (C) and (F), respectively.

for the elected official exception. The Board argues that the applicable statute's requirement for retirement—termination of employment with *an* affiliated public employer, *see* § 10–11–1(Z)—is not any different from the current version of the Act that requires termination of employment with *all* affiliated public employers, *see* NMSA 1978, § 10–11–8(A)(2) (Repl.Pamp.1992). Judge Rainaldi counters that the amended statute clearly requires termination with all affiliated public employers, but that the applicable statute required termination only from a single affiliated public employer. We do not need to address any technical interpretation of "all" versus "an", as that is not the determinative factor.

*Judge Rainaldi did not "become" an elected official on January 1, 1987.* In conclusions numbered four and eight, the district court held that the operative provision of the elected official exception was that the employee be retired, that Judge Rainaldi complied with all of the requirements of the exception, and that he was eligible for retirement benefits. Assuming for now that Judge Rainaldi did become an annuitant on or before January 1 by virtue of ending his service as a municipal judge and asking PERA to delete him from the membership roll as a magistrate, Section 10–11–9(E) clearly requires that the employee *become* an elected official on or after January 1, 1981. The legislature significantly amended the Act by 1981 N.M. Laws, Chapter 135, Sections 1 to 18. In Section 3, the legislature amended Section 10–11–9, including in the Act for the first time the elected official exception. The newly created exception included a grandfather clause allowing annuitants who were elected to successive terms beginning on January 1, 1981 the option of electing to take advantage of the exception beginning with that term of office.

The wording of the elected official exception, including the grandfather clause, clearly indicates that the legislature intended for there to be a difference between a person who "became" an elected official, i.e., was elected for the first time to a term beginning on or after January 1, 1981, and a person who was serving a successive term. If a person re-elected to a successive term became an elected official upon re-election, the grandfather clause would be superfluous. Therefore, the only conclusion is that a person who begins a successive term has not *become* an elected official. The elected official exception, on its face, applies only to those who became an elected official after they were already an annuitant.[7] Even if Judge Rainaldi became an annuitant on or before January 1, he did not *become* an elected official when he began his new term as a magistrate in January 1987; he was already an elected official and he merely retained that status in a successive term. Because Judge Rainaldi did not become an elected official when he began his successive term in January 1987, he was not eligible for the elected official exception. The district court's conclusion that Judge Rainaldi qualified for the exception is in error.

Any interruption or break in service of Judge Rainaldi's employment as a magistrate was admittedly for the purpose of simultaneously collecting both retirement benefits and a salary. In New York, the purpose of an elected official exception for retired public employees similar to the provision at issue here was examined in *Baker v. Regan*, 114 A.D.2d 187, 498 N.Y.S.2d 557, *aff'd in part, rev'd in part on other grounds*, 68 N.Y.2d 335, 509 N.Y.S.2d 301, 501 N.E.2d 1192 (1986). That court found that the purpose of the exception is to encourage those who have retired from public service to again serve the public in an elected capacity, not to allow those who

**7.** This interpretation of the elected official exception and the grandfather clause is bolstered further by the latest version of the exception as amended by the 1987 legislature, which deleted the grandfather clause. *See* NMSA 1978, § 10–11–8(F) (Repl.Pamp.1992). The deletion makes

sense since any who could have taken advantage of it had to have been an annuitant and use the exception in 1981, the year the statute containing the exception was first passed. *See* § 10–11–9(E) (Repl.Pamp.1983).

are already elected officials to reap a windfall by collecting retirement benefits while continuing to work in the same capacity. *Id.* 498 N.Y.S.2d at 560. Here, as was the case in the New York statutory scheme, the public policy evinced by the legislature is in favor of suspending retirement benefits of retirees who return to service in the public sector as elected officials. *See Baker v. Regan*, 509 N.Y.S.2d 301, 302, 501 N.E.2d 1192, 1193 (1986). Exceptions like the one for an elected official "were enacted for limited purposes and were not meant to abrogate or dilute the long-standing and overriding state policy to prohibit the receipt of retirement benefits and salary at the same time which could constitute an abuse of the public fisc." *Id.* That limited purpose does not include allowing persons to take advantage of the exception and receive both annuity payments and a salary when they are merely continuing in the same position that they have occupied before they "retired". The elected official exception serves the limited purpose of encouraging people who have accumulated expertise and wisdom in their years of service to run for elected office after retiring from their former positions. The legislature could not have intended to encourage those who have already been serving to simultaneously collect a salary and retirement benefits earned in that position. Our decision today comports with that limited purpose policy.

*The Board is not estopped from denying benefits to Rainaldi.* In his answer brief, Judge Rainaldi asserts that the Board is estopped from denying him retirement benefits. We note that estoppel was raised in the second count of his complaint. However, the district court issued no conclusion regarding application of estoppel against the Board. Such a conclusion by this Court would not be supported by the court's findings, which do not address all of

the elements required for estoppel against the Board, as a state agency.[8] Because the court ruled in Judge Rainaldi's favor based on the law, it was not necessary to enter findings regarding estoppel, although Rainaldi did request such findings. If we were to find that use of estoppel was appropriate against the Board, we would have to remand the case for entry of additional findings on the elements of estoppel. We look then to see if, in this case, it would be appropriate to assert estoppel against the state agency.

The essential elements of estoppel are set forth in *State ex rel. State Highway Dep't v. Yurcic*, 85 N.M. 220, 223, 511 P.2d 546, 549 (1973). We have allowed the use of estoppel against the state reluctantly. *See, e.g., id.* (estoppel not applied against the state except in exceptional situations where there is a shocking degree of aggravated and overreaching conduct); *National Advertising Co. v. State ex rel. State Highway Comm'n*, 91 N.M. 191, 194, 571 P.2d 1194, 1197 (1977) (estoppel available against state only where right and justice demand it).

■■■ The statements relied upon by Judge Rainaldi to the effect that he would qualify for the elected official exception were not representations of facts that existed; they were opinions as to the effect of the law upon a certain factual situation. Generally, statements of opinion on a matter of law raise no estoppel where the facts are equally well known to both parties. *State ex rel. Reynolds v. McLean*, 76 N.M. 45, 47, 412 P.2d 1, 3 (1966); *see also*, 28 Am.Jur.2d *Estoppel and Waiver* § 47 (1966) (expression of opinion on matter of law not generally basis for estoppel); 31 C.J.S. *Estoppel* § 79 (1964) (same); *cf. Gonzales v. Public Employees Retirement Bd.*, 114 N.M. 420, 426, 839 P.2d 630, 636 (Ct.App.) (specific statements concerning

---

8. For example, the court did not enter a finding that Judge Rainaldi's actions in reliance on the statements were detrimental to his interests. We note that Judge Rainaldi continued in one of his judicial positions when he was already contemplating leaving one or more of his positions. As of January 1, 1987, in order to keep his magistrate position, he apparently would

have had to leave his municipal position anyway. *See* 1986 N.M. Laws, ch. 96 (codified as NMSA 1978, § 35-1-36.1 (Repl.Pamp.1988)) (effective January 1, 1987 all magistrates, with a few exceptions not applicable to Judge Rainaldi, "shall be full-time magistrates" and may not hold other employment that conflicts with their full-time judicial duties).

amount of retirement benefits were considered to be statements of fact sufficient to warrant application of estoppel), *cert. denied*, 114 N.M. 227, 836 P.2d 1248 (1992). An exception to the general rule· may be made where the advisor has actual or professed special knowledge. 28 Am.Jur.2d *Estoppel and Waiver* § 47; 31 C.J.S. *Estoppel* § 79 (1964).

■ The Board employees advised Judge Rainaldi that he would qualify for the · elected official exception if he took certain steps. As employees of the agency charged with enacting or administering the Act, those employees had special knowledge regarding its application. Given our holding today, allowing Judge Rainaldi to qualify for the elected official exception would be contrary to law. We are left then with the question of whether the demands of right and justice should be the basis for estopping a state agency from denying benefits to which the recipient of advice would not otherwise be entitled because such benefits would be contrary to law.

We have previously refused to allow estoppel based on advice given by a government employee in contradiction of a statute. *See Trujillo v. Gonzales*, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) (county not estopped to deny employment contract based on promises made by county commissioners made outside of board meeting where language of statute clearly states that powers of municipal council must be exercised at legally called meeting); *see also Taxation & Revenue Dep't v. Bien Mur Indian Market Center, Inc.*, 108 N.M. 228, 231, 770 P.2d 873, 876 (1989) ("New Mexico cases recognize that, especially in cases involving assessment and collection of taxes, the state will be held estopped only rarely."); *cf. Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 110 S.Ct. 2465, 2467, 110 L.Ed.2d 387 (1990) (holding estoppel may not be used to

force federal government to pay monies not authorized by Congress). *But see United States v. Bureau of Revenue*, 87 N.M. 164, 166, 531 P.2d 212, 214 (Ct.App. 1975) (estopping retroactive, but not prospective, collection of taxes based on Bureau's prior representations). We note that, in cases where estoppel is asserted against the state based on erroneous advice given by a state employee, there well may be a distinction between those cases where estoppel would result in the *receipt of benefits* to which an individual would not otherwise be entitled and those where estoppel would foreclose *liability* of an individual who relied on the advice.

Other state courts also have ruled that estoppel cannot lie against the state when the act sought to be carried out through the use of estoppel is contrary to law. *See Bresnahan v. Bass*, 562 S.W.2d 385, 390 (Mo.Ct.App.1978) (refusing to estop state agency where plaintiff was included in public retirement system based on mistaken attorney general opinion and estoppel would require retirement board to act inconsistently with governing statute); *see also Austin v. Austin*, 350 So.2d 102, 105 (Fla.Dist.Ct.App.1977) (holding erroneous statements in a retirement system's benefits pamphlet did not estop retirement agency, the court said: "Administrative officers of the state cannot estop the state through mistaken statements of the law."), *cert. denied*, 357 So.2d 184 (1978);[9] *Louisiana State Troopers Ass'n v. Louisiana State Police Retirement Bd.*, 417 So.2d 440, 445 (La.Ct.App.1982) ("It is well settled that equitable considerations and estoppel cannot be permitted to prevail when in conflict with positive written law."); *Parsons v. Department of Transp.*, 74 Misc.2d 828, 344 N.Y.S.2d 19, 24 (Sup.Ct. 1973) ("The mere expression of an erroneous opinion on a matter of law raises no estoppel, and this is also true where a

---

**9.** Judge Rainaldi cites two Florida cases that were decided after *Austin* where the courts applied estoppel against the State agency. *See Kuge v. Department of Admin., Div. of Retirement*, 449 So.2d 389 (Fla.Dist.Ct.App.1984); *Salz v. Department of Admin., Div. of Retirement*, 432 So.2d 1376 (Fla.Dist.Ct.App.1983). In both

cases estoppel was allowed where the agency erred in calculating the number of years of service that could be credited to a particular member. Both courts, without mentioning *Austin*, pointed out that the representations were factual, not of law.

mistaken opinion is given by an agent of a governmental body which is engaged in administering or enforcing the law in question." (citations omitted)). A very similar factual situation to the instant case was addressed in *Baker*, 498 N.Y.S.2d 557. There, a number of judges were told by retirement association officials that they could retire between terms and continue to collect retirement benefits after their new terms began, and they were told that this practice was legal and had been administratively approved before. The intermediate appellate court in New York ruled that the judges did not qualify for that public employees retirement act's version of the elected official exception, then went on to address their estoppel claim, stating, with no other discussion, that "the doctrine of estoppel is not applicable to create rights to retirement benefits to which there is no entitlement." *Id.* at 560.

While we do not restrict the use of estoppel against the state as severely as the United States Supreme Court has restricted its use against the federal government, we do agree with reasoning stated by that Court concerning the giving of advice by government employees:

> It ignores reality to expect that the Government will be able to "secure perfect performance from its ... employees...."
>
> ... Although mistakes occur, we may assume with confidence that Government agents attempt conscientious performance of their duties and in most cases provide free and valuable information to those who seek advice about Government programs. A rule of estoppel might create not more reliable advice, but less advice. The natural consequence of a rule that made the Government liable for the statements of its agents would be a decision to cut back and impose strict controls upon Government provision of information in order to limit liability. Not only would valuable informational programs be lost to the public, but the greatest impact of this loss would fall on those of limited means, who can least afford the alternative of private advice.

*Office of Personnel Management*, 496 U.S. at 433–34, 110 S.Ct. at 2476 (citations omitted) (substantially relying for its ruling on the appropriations clause of the United States Constitution).

We are not prepared to adopt a rule that the state may never be estopped by the statement of an employee when a person comes to that employee for an opinion regarding a question where that employee has special knowledge. In this case, right and justice do not demand that the Board be estopped from denying benefits to Judge Rainaldi when the most that he has done in reliance upon the opinion given was to fill out some paperwork, continue to work as a magistrate, and receive pay therefor.

■ Judge Rainaldi may also claim that the Board resolution granting the benefits constitutes a statement upon which estoppel could be based. In that instance, we note simply that the resolution itself was passed subject to legal documentation from the Attorney General's office. Any reliance upon the Board's acceptance of his retirement could not have been reasonable due to the contingency of that approval. *See Bien Mur*, 108 N.M. at 231, 770 P.2d at 876 (that reliance be reasonable is an element of estoppel).

■ Judge Rainaldi also argues that the relationship between a public employee retirement association and a vested member is contractual in nature, and should be analyzed as a contract. For this proposition he cites *State ex rel. Hudgins v. Public Employees Retirement Bd.*, 58 N.M. 543, 273 P.2d 743 (1954), and 60A Am. Jur.2d *Pensions and Retirement Funds* § 1620 (1988). In his complaint, Judge Rainaldi made no mention of a claim sounding in contract, and there are no findings as to a contract between the parties. We will not consider an issue raised for the first time on appeal where it does not involve subject-matter jurisdiction, general public interest, or fundamental error. *See* SCRA 1986, 12–216 (Repl.Pamp.1992). Further, if we considered the relationship to be contractual, Judge Rainaldi would

have had a legal remedy and mandamus would have been inappropriate.

In light of the foregoing, the declaratory judgment of the district court is reversed, the permanent writ of mandamus issued against the Board is vacated, and this case is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.