901 P.2d 186

AMERICAN LEGION POST NO. 49; Roger Boger; Carlisle Bennett Post No. 13; Luther Otero; Fraternal Order of Police; Benito Gonzales; Veterans of Foreign Wars Post No. 2951; Johnny Romero; John Does 1–15; Fleet Reserve Association (Doe # 1); John E. Johnston (Doe # 2); Albuquerque Lodge No. 461 BPOE; Veterans of Foreign Wars Post No. 3280; BPOE 2083; Veterans of Foreign Wars Post No. 9515; Veterans of Foreign Wars Post No. 3224; BPOE 460; Veterans of Foreign Wars Post No. 401; Veterans of Foreign Wars Post No. 7686; Veterans of Foreign Wars Post No. 3015, Petitioners–Appellants/Cross–Appellees,

and

American Legion Post No. 100; American Legion Post No. 99; East Heights Moose Lodge 2241; Disabled American Veterans Chapter 3; American Legion Post No. 72; Loyal Order of Moose Lodge 1517; Santa Fe Fraternal Eagles 2811; Española Fraternal Eagles 3695; Fraternal Order of Eagles 4101; Solo Club Inc.; Gallup Elks Lodge No. 1440; Rio Rancho Veterans of Foreign Wars Post No. 5890; Rio Rancho Elks Lodge No. 2500; Rio Rancho American Legion Post No. 118; Alamogordo Lodge 1897 of BPOE; Fraternal Order of Police Lodge 1; Veterans of Foreign Wars Post No. 3242; American Legion Post No. 122; Club National Key Club, Intervenors–Appellants/Cross–Appellees,

v.

Mary Ann S. HUGHES, Director, Alcohol and Gaming Division, Regulation and Licensing Department; Robert L. Ortiz, Director, Special Investigations Division, Department of Public Safety; and Department of Public Safety; Respondents–Appellees/Cross–Appellants.

No. 14831.

Court of Appeals of New Mexico.

Nov. 23, 1994.

Certiorari Granted March 15, 1995.

Certiorari Quashed July 25, 1995.

Michael E. Vigil, Marchiondo & Vigil, P.A., Albuquerque, for petitioners-appellants.

David Norvell, The Norvell Law Firm, Albuquerque, for Intervenors Veterans of Foreign Wars Post No. 6216; Roswell Veterans

of Foreign Wars Post No. 2575; Rio Rancho Elks Lodge No. 2500; Gallup Elks Lodge No. 1440; American Legion Post No. 118; Veterans of Foreign Wars Post No. 5890; East Heights Moose Lodge 2241; and Alamogordo Lodge No. 1897 of B.P.O.E.

Chris G. Lackmann, Albuquerque, for Intervenor American Legion Post No. 99.

Robert B. Martinez, Albuquerque, for Intervenors Loyal Order of Moose Lodge 1517; Fraternal Order of Eagles 4101; Solo Club, Inc.; Fraternal Order of Police Lodge No. 1; Veterans of Foreign Wars Post No. 3242; Club National Key Club; and American Legion Post No. 122.

George E. Adelo, Santa Fe, for Intervenors Santa Fe Fraternal Order of Eagles 2811; and Española Fraternal Order of Eagles 3695.

John J. Schoeppner, Albuquerque, for Intervenors Disabled American Veterans Chapter 3; American Legion Post No. 72; and American Legion Post No. 100.

Tom Udall, Atty. Gen., Joel Cruz–Esparza, Asst. Atty. Gen., Santa Fe, for respondents-appellees.

### OPINION

PICKARD, Judge.

Several charitable and fraternal organizations (the Clubs) licensed to conduct certain games of chance under the Bingo and Raffle Act (the Act), NMSA 1978, Sections 60–2B–1 to –14 (Repl.Pamp.1991), brought suit for declaratory judgment requesting that their practice of exchanging pull tabs for free games won on certain video machines they operated be declared a permissible "game of chance" under the Act. The district court held that their practice was not permissible under the Act, and that the Clubs' right to equal protection was not violated by holding the practice impermissible under the Act. The district court, however, estopped the State from enforcing the "Act against the Clubs until after the legislature and the Governor have the opportunity to address this issue in the 1993 legislative session."

█ Both parties appealed. This Court, in its first two calendar notices, proposed dismissing the State's cross-appeal for failure to file a docketing statement. The State has never filed a docketing statement in accordance with SCRA 1986, 12–208 (Repl.1992). Therefore, we deem the cross-appeal abandoned. *See Wilcox v. Timberon Protective Ass'n,* 111 N.M. 478, 481, 806 P.2d 1068, 1071 (Ct.App.1990), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991).

### ISSUES

Three issues are raised by the Clubs: first, whether the Act permits the exchange of free games won on video machines for pull tabs, which give winners of those games a chance of receiving prizes; second, whether applying the Act to prohibit the Clubs' practice violates their equal protection rights; and third, whether the district court erred in its application of equitable estoppel against the State for a finite period of time. We answer these three questions in the negative and affirm the district court.

### FACTS

The Clubs are non-profit organizations licensed under the Act to conduct permissible games of chance. In 1990, they devised a system of awarding pull tabs to those customers who had won free games on various video machines and wished to exchange the free games for pull tabs. The customers would buy a certain number of games on the video machine from the Clubs and, in playing those games, would either lose or win. The video games used were poker, blackjack, and keno machines. If the customers won a sufficient number of times, they would be awarded free games by the video machine. When the customers finished playing the games, if they had any free games left over, they could donate them to the Clubs, receive a credit for the amount of free games they had won, or exchange them for pull tabs.

Appellees are various officials of state agencies, charged with the enforcement of the Act, that licensed and monitored the activities of the Clubs. Until 1992, Appellees, at various times, inspected the Clubs' operations and did not specifically object to the practice of exchanging pull tabs for free games won on the video machines. Appel-

lees closely monitored the Clubs' activities and initially maintained a policy of simply ensuring that each video machine was carefully metered and that pull tabs were not dispensed in an area where alcoholic beverages were served.

The district court made factual findings consistent with the facts as set out above. The district court concluded that the practice of exchanging free games won on video machines for pull tabs was not a permissible "game of chance" under the Act. The district court also concluded that the Clubs had detrimentally relied on Appellees' policy of not applying the Act to prevent them from operating their system of exchanging free games for pull tabs. Accordingly, the district court equitably estopped Appellees from enforcing the Act in a way that would infringe upon the Clubs' operation of their exchange system until the 1993 Legislature addressed the issue.

## DISCUSSION

### A. GAME OF CHANCE

At issue is Section 60–2B–3(M), which defines a "game of chance" as:

[T]hat specific kind of game of chance commonly known as bingo or lotto in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random and that specific kind of game of chance commonly known as raffles which is conducted by drawing for prizes or the allotment of prizes by chance or by the selling of shares, tickets or rights to participate in the game[.]

This Court applied this definition to facts remarkably similar to the instant ones in *State ex rel. Rodriguez v. American Legion Post No. 99*, 106 N.M. 784, 750 P.2d 1110 (Ct.App.), *cert. denied*, 106 N.M. 588, 746 P.2d 1120 (1987), *and cert. denied*, 107 N.M. 16, 751 P.2d 700 (1988). In that case we decided that the practice of exchanging free games won on video machines similar to the ones at issue here for cash or prizes did not fit the definition of "raffle" and was not a permissible game of chance under the Act.

■ The Clubs urge us to construe the definition of "game of chance" to encompass their system of exchange. Specifically, the Clubs contend that the phrase "by the selling of shares, tickets or rights to participate in the game" legitimizes their activity because all they are doing is selling games on the video machines, which, if won, result in free games, which may be exchanged for pull tabs. Thus, the Clubs contend, they are merely selling the rights to participate in the game of pull tabs. This position is untenable. The Clubs are not selling the rights to participate in a raffle; they are selling the rights to operate a gambling device through which the customer might win a chance to participate in a raffle.

■ Central to our reasoning in *Rodriguez* was the concern that a broad definition of the word "raffle" as a permissible game of chance would allow charitable clubs to conduct any type of gambling under the rubric of the definition "raffle." *Id.*, 106 N.M. at 786, 750 P.2d at 1112. We have the same concern here. The Clubs are merely attempting an end run around the Act's prohibition of awarding prizes for free games won on video machines as construed in *Rodriguez*. If we allowed the Clubs to operate any type of electronic video game, including those portraying traditional gambling games, and let their customers exchange games won for pull tabs, then we would be sanctioning commercial gambling as prohibited by NMSA 1978, Sections 30–19–1 to –15 (Repl.Pamp.1994). *See Rodriguez*, 106 N.M. at 786, 750 P.2d at 1112. This we decline to do.

■ While we recently found that pull tabs, even the electronic variety, are permissible games of chance under the Act, *Infinity Group, Inc. v. Manzagol*, 118 N.M. 632, 634, 884 P.2d 523, 525 (Ct.App.1994), that holding does not change the result here. When operated to award free games which customers may exchange for pull tabs, the Clubs' games are "gambling devices" as defined by Section 30–19–1(D), which reads:

D. "gambling device" means a contrivance other than an antique gambling device which, for a consideration, affords the player an opportunity to obtain anything of value, the award of which is determined by chance, even though accompanied by some

skill and whether or not the prize is automatically paid by the device[.]

When customers exchange free games won at the Clubs' machines for pull tabs, they are obtaining something of value for winning the game. The chance to win in the pull tab is something of value. The Clubs may sell conventional or electronic pull tabs directly, as permitted by *Infinity Group,* because such sales come within the definition of permissible games of chance. However, exchanging pull tabs for free games won on some unrelated and impermissible game is impermissible.

## B. EQUAL PROTECTION

■ The Clubs argue that their equal protection rights are violated by the application of the Act to them and not to Indian groups. A statute that classifies on the basis of race must support a compelling state interest. *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988). Of course, a preliminary question is whether the statute classifies on the basis of race at all. "A claimant must show how he is unequally treated before an issue arises." *State ex rel. Gonzales v. Manzagol,* 87 N.M. 230, 234–35, 531 P.2d 1203, 1207–08 (1975). The Clubs have failed to make the requisite showing that their equal protection rights are being violated. We first consider the Act's facial constitutionality and then the constitutionality of the State's practice of enforcement against the Clubs.

■ Under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C.A. §§ 2701 to 2721 (Supp.1994), gaming is broken into three categories. Class I includes social gaming, where any prizes are nominal at most, and traditional sorts of Indian gaming. *Id.* § 2703(6). Class II includes bingo and pull tabs, but not raffles, and expressly not video gaming. *Id.* § 2703(7)(A), (B). Class III is all other types of gaming not included in Class I or II. *Id.* § 2703(8). The Clubs' practice of exchanging pull tabs for free games won on video machines fits within the Class III classification of gaming under IGRA. *Id.* § 2703(7)(B)(ii) (specifically excluding video gaming from Class II).

■ States have limited powers to regulate Class II gaming under IGRA. *Id.* § 2710(a)(2), (b). Class III gaming activities, on the other hand, are only allowed on Indian lands if they are:

(A) authorized by an ordinance or resolution that—

(i) is adopted by the governing body of the Indian tribe having jurisdiction over such lands,

(ii) meets the requirements of subsection (b) of this section, and

(iii) is approved by the Chairman,

(B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and

(C) conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

*Id.* § 2710(d)(1).

■ The Act does not distinguish between the Clubs and any other group. We have found that the Clubs' activities are not permissible under the Act. The Act does not authorize similar activities to be conducted for any purpose by any person, organization, or entity. Nor do the Clubs allege that the Act permits Indians to conduct such activities while denying that privilege to others such as the Clubs. Although the Clubs urge us to take judicial notice that video games such as those conducted by the Clubs are conducted by Indians, they fail to allege that the Act impermissibly discriminates at all.

■ We turn next to the State's practice of enforcing the Act. The Clubs allege that certain business establishments and Indian Tribes are permitted to conduct gambling similar to that sought by the Clubs. The only evidence to support this contention was the testimony of an agent for a company that leases video machines. He described games he saw at two pizza parlors in Albuquerque and two Indian reservations. However, this testimony did not establish that the pizza parlors or Indian tribes are "allowed" to conduct commercial gambling otherwise prohibited by state law. This showing falls far short of a practice of purposeful discrimination. *See State v. Cochran,* 112 N.M. 190,

192–93, 812 P.2d 1338, 1340–41 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991).

 Even if it is true that the State does not enforce its gambling laws against Indians, there is a compelling reason for failing to do so. The State of New Mexico has no jurisdiction to enforce its gambling laws in Indian Territory. While our state gambling laws apply on Indian Territory to the same extent that they do elsewhere in the state, 18 U.S.C.A. § 1166(a) (West Cum.Supp.1994), the United States has provided for exclusive federal jurisdiction over criminal prosecutions for violations of those laws, except in limited circumstances not applicable to this case. *Id.* § 1166(d). *See Sycuan Band of Mission Indians v. Roache,* 54 F.3d 535, 538–40 (9th Cir.1994) (enjoining the State of California from enforcing its criminal gambling laws in Indian country because of "the federal government's [exclusive] right to enforce that law"). *See also Pueblo of Santa Ana v. Hodel,* 663 F.Supp. 1300, 1313–15 (D.D.C.1987) (finding that New Mexico gambling laws, except for those establishing horse racing, are applicable to Indian lands and allowing the Secretary of the Department of Interior to enforce them). Therefore, the Clubs' equal protection challenge fails.

## C. EQUITABLE ESTOPPEL

 The courts of this State once shied away from applying estoppel against the State at all. *Ross v. Daniel,* 53 N.M. 70, 75–76, 201 P.2d 993, 996 (1949); *State ex rel. State Game Comm'n v. Red River Valley Co.,* 51 N.M. 207, 228, 182 P.2d 421, 434 (1945). Despite this reluctance, estoppel against the State is a well-grounded doctrine in New Mexico. *See, e.g., Stuckey's Stores, Inc. v. O'Cheskey,* 93 N.M. 312, 600 P.2d 258 (1979), *appeal dismissed,* 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980); *United States v. Bureau of Revenue,* 87 N.M. 164, 531 P.2d 212 (1975). Estoppel against the State is a distinct legal theory, one that is used sparingly in New Mexico. *See generally Rainaldi v. Public Employees Retirement Bd.,* 115 N.M. 650, 857 P.2d 761 (1993) (Supreme Court held doctrine not applicable).

The essential elements of estoppel against the State were laid out in *State ex rel. State Highway Dep't v. Yurcic,* 85 N.M. 220, 223, 511 P.2d 546, 549 (1973). New Mexico courts are reluctant "to allow estoppel [against the State] based on advice given by a government employee in contradiction of a statute." *Rainaldi,* 115 N.M. at 658, 857 P.2d at 769. However, since the State abandoned its cross-appeal in which it might have raised the issue of whether estoppel should have been allowed at all, the only estoppel issue before us is whether the district court erred in applying estoppel for only a limited period of time.

 The Supreme Court has observed that "there well may be a distinction between those cases where estoppel would result in the *receipt of benefits* to which an individual would not otherwise be entitled and those where estoppel would foreclose *liability* of an individual who relied on the advice." *Id.* (Emphasis in original.) We conclude that the distinction between applying estoppel to prevent the State from denying benefits and to preclude liability of an individual that the *Rainaldi* Court recognized is of particular concern where a criminal statute is at issue. *Id.* at 658, 857 P.2d at 769. In this case we are faced with an estoppel which, if applied, would foreclose criminal liability of the Clubs.

The convergence of a general reluctance to apply estoppel against the State and the particular concern attached to estopping the enforcement of a criminal statute counsel hesitation in endorsing the district court's use of estoppel. In the context of this case, however, assuming that it was proper to estop the State from enforcing the Act against the Clubs at all, it was proper for the estoppel to operate for only the limited period of time necessary for the legislature to address the issue of the Act's application to the Clubs' activities. *See, e.g., Hilburn v. Brodhead,* 79 N.M. 460, 464, 444 P.2d 971, 975 (1968) ("court of equity has power to meet the problem presented, and to fashion a proper remedy to accomplish a just and proper result"); *see also Navajo Academy, Inc. v. Navajo United Methodist Mission Sch., Inc.,* 109 N.M. 324, 785 P.2d 235 (1990)

(affirming the trial court's order permitting a tenant of a school to remain on the premises for three years in order to locate alternate space). Given the showing of detrimental reliance made below, we cannot say that the district court erred in limiting the estoppel to a finite period of time.

## CONCLUSION

The judgment is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and BOSSON, J., concur.